WALKER et al. v. UNITED STATES.
No. 9134.

Circuit Court of Appeals, Ninth Circuit.
Dec. 18, 1940.

Clyde H. Walker, in pro. per.

J. Charles Dennis, U. S. Atty., and Gerald Shucklin, Asst. U. S. Atty., both of Seattle, Wash., for appellee.

Before WILBUR, GARRECHT, and HANEY, Circuit Judges.

HANEY, Circuit Judge.

Appellants were convicted on two indictments and bring this appeal.

Indictment No. 14948 was based on 18 U.S.C.A. § 338, which provides in part: "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises * * * shall, for the purpose of executing such scheme or artifice or attempting so to do, place, or cause to be placed, any letter, postal card, package, writing, circular, pamphlet, or advertisement, * * * in any post office, or station thereof, or street or other letter box of the United States, or authorized depository for mail matter, to be sent or delivered by the post office establishment of the United States, * * * or shall knowingly cause to be delivered by mail according to the direction thereon * * * any such letter, postal card, package, writing, circular, pamphlet, or advertisement, shall be fined not more than $1,000, or imprisoned not more than five years, or both."

Indictment No. 14948 charged that appellants devised a scheme to obtain money and property by means of fraudulent representations from eight named individuals, hereafter called investors; that the scheme consisted of sales of common and preferred stock and bonds of United Collieries and debentures of Anglo-Pacific Anthracite Collieries, Ltd., the latter holding an agreement with the former for operating the coal mining properties of United Collieries; and that the scheme also contemplated the exchange of such debentures for bonds of United Collieries.

It was charged that the scheme was to be accomplished by the making of certain representations, which were alleged to be false. The first three counts were based on the scheme above mentioned, and each of them charged appellants with causing to be delivered by mail a letter therein set forth. The fourth count was dismissed and sealed by order of court.

The fifth count alleged that appellants devised a scheme for obtaining money and property from the stockholders and depositors of the United States National Bank of Vancouver, Washington, by certain representations, alleged to be false, to the effect that appellants could prevent any loss to such stockholders and depositors which had occurred upon the sale of the assets by the conservator thereof to another bank, if such stockholders and depositors would furnish appellants sums of money. The fifth, sixth, eighth and ninth counts were based on the scheme just mentioned, and each of them charged appellants with causing to be delivered by mail a circular letter, postal card or advertisement therein set forth. The seventh count was dismissed and sealed by order of court.

Indictment No. 15048 was based on 18 U.S.C.A. § 88, which provides in part: "If two or more persons conspire * * * to commit any offense against the United States * * * and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined not more than $10,000, or imprisoned not more than two years, or both."

Such indictment charged appellants with having conspired to devise a scheme to obtain money by fraudulent representations and in execution of said scheme to use the United States mails. It was charged that the scheme consisted of the two related in the previous indictment and in addition, obtaining money by representing that they had great political influence with high government officials and could procure appropriations and allotments of funds belonging to the government, for various projects, including a bridge over the Columbia River at Astoria, Oregon, which representation was alleged to be false. Twenty-one overt acts were alleged.

The two indictments were consolidated for trial. A mistrial resulted. On the same day, August 8, 1938, the court below stated in open court: "I do not know whether you have given the matter any consideration, Mr. Dennis, but at the time that Mr. Walker denounced to the Court Mr. Swenson, and at a time when the jury was not present, as I recall, he said if he lived he would wring that Swede's neck. If the Court had occasion to pass on the matter now, he would have considered it contempt. It was one that the Court, in the exercise of its jurisdiction, might have summarily disposed of at the time, but for the fact that it would have blocked the trial. It may be that the Court might very well exercise now its summary jurisdiction, but the matter has awaited two months, and I will ask you to prepare the necessary papers for citing into Court on the 17th of October

Mr. Walker to show cause why he should not be punished for contempt."

The court further stated that he would "welcome" entertainment of the citation by another judge because it "seems sometimes the public appears to get the idea that in such contempt proceedings it is the Judge against the accused, and the Judge has all of the weapons and makes it a personal matter. There is no personal feeling on the part of this Judge."

On October 17, 1938, the court below directed the district attorney to have the contempt matter heard by another judge. Appellant Walker then stated that he had no objection to a hearing of the contempt matter by the judge who had just spoken and who had initiated the contempt proceeding. The judge thereupon replied "that he as stated before would have to lean too far backwards and the matter would be taken up by another Judge". On the following day appellant Walker stated: "Your Honor has stated that you would have to lean too far backwards to give the defendant Walker a fair trial on the contempt matter and I want to ask you if you will give the defendants a fair and impartial trial in the matter of the indictments herein". The court below replied: "I refuse to answer that question".

Thereupon Walker moved for a dismissal of the indictments on the ground, among others that "the judge is prejudiced to the defendants and should not preside at the trial of the defendants and that the Judge should withdraw in favor of another". The motion was denied, the court stating that "it was without prejudice to the defendant Walker's filing a statutory affidavit of prejudice in so far as the Judge of this Court is concerned, providing the affidavit is filed forthwith". No such affidavit was filed.

A jury was drawn, including one Stocking, and passed by appellee for cause. On the next day when Walker was examining the jurors, juror Stocking arose and asked the court if it was proper for him to ask the court a question regarding his fitness to serve on the jury. After being permitted to do so, Stocking "then stated that he did not think of this yesterday, or he would have brought' it out, but that a very good friend of his was a witness for the prosecution in the case during the last hearing, that the juror hadn't read his testimony or discussed his testimony with him, but if he were to be called he was very much afraid he would be prejudiced in favor of his testimony, and he didn't think he could conscientiously serve under those conditions * * *"

The record discloses the following:

"* * * Mr. Walker then asked the juror if the witness was a material witness, and the juror replied that he thought the witness would be called in the nature of expert testimony on coal.

"Mr. Walker: Is that Mr. Tarr?

"Mr. Stocking: Yes.

"Mr. Walker: And the testimony that Mr. Tarr would give you would believe over and above any testimony that any other witness would give due to that friendship?

"Mr. Stocking: I can't say that, I have known him a long, a good many years, and an able mind. I have known him very intimately for a good many years."

Walker then moved that the entire "panel of this jury" be excused, on the ground that Stocking's statement had prejudiced the other jurors against appellants. Stocking was excused and did not serve on the trial jury, but the motion was denied.

Appellants were convicted on all counts of the first indictment, except the fourth and seventh, and on the second indictment, and appeal. The assignments of error are poorly drawn, some being given duplicate numbers, and others being incomplete. Apparently, there are a total of 93 assignments of error, which is flagrant disregard of expressions of the Supreme Court and this court regarding such practice. Only 21 assignments of error are specified.

■ It is contended that indictment No. 15048 fails to state a public offense in the district of the court below because it alleges that appellants conspired at various places within the district of the court below, and at places in other districts. Appellants urge that the court below would not have jurisdiction over the conspiracy at such other places, and therefore evidence of the commission of overt acts outside the district of the court below was inadmissible and the indictment alleging the commission of such acts is defective. The question was not raised by an assignment of error, but appellants ask us to consider it as a plain error unassigned. No error was committed because a prosecution for conspiracy under this section may be maintained in any district where an overt act in furtherance of the conspiracy is committed (Hyde v. Unit-

ed States, 225 U.S. 347, 367, 32 S.Ct. 793, 56 L.Ed. 1114, Ann.Cas.1914A, 614) although the prosecution might be held at the place of formation of the conspiracy, regardless of the place of the commission of the overt act. Hyde v. Shine, 199 U.S. 62, 76, 25 S.Ct. 760, 50 L.Ed. 90. Here overt acts were alleged and proven to have been committed in the district of the court below.

██ Appellants also contend that the court erred in not withdrawing from the trial because of prejudice. In passing, it may be said that it is doubtful whether the question is raised here. Appellants moved to dismiss the indictments on the ground of prejudice of the trial judge, but such prejudice is no ground for dismissing an indictment. We may assume that "due process" implies that the trial must be had before a fair and impartial judge. It is urged that the judge's statement to the effect that he would have to "lean too far backwards" shows that he was prejudiced. However, the record dissolves such view. It is abundantly clear that the judge was speaking of the contempt matter and not the trial, and that he made the statement because he believed the public might take offense at the fact that he had initiated the contempt matter and was acting as judge and jury at the same time.

The judge, no doubt, was fully aware of the law in contempt matters, as stated in Cooke v. United States, 267 U.S. 517, 534, 535, 45 S.Ct. 390, 394, 69 L.Ed. 767, as follows: "To preserve order in the court room for the proper conduct of business, the court must act instantly to suppress disturbance or violence or physical obstruction or disrespect to the court, when occurring in open court. There is no need of evidence or assistance of counsel before punishment, because the court has seen the offense. Such summary vindication of the court's dignity and authority is necessary. It has always been so in the courts of the common law, and the punishment imposed is due process of law. Such a case had great consideration in the decision of this court in Ex parte Terry, 128 U.S. 289, 9 S.Ct. 77, 32 L.Ed. 405. It was there held that a court of the United States, upon the commission of a contempt in open court, might upon its own knowledge of the facts, without further proof, without issue or trial, and without hearing an explanation of the motives of the offender, immediately proceed to determine whether the facts justified punishment and to inflict such punishment as was fitting under the law."

The statement made by Walker, and said to be contemptuous, was not a personal attack on the judge, but nevertheless the judge went further than was necessary in demanding that the contempt matter be heard by another judge. See Cooke v. United States, supra, 267 U.S. page 539, 45 S.Ct. 390, 69 L.Ed. 767.

██ In addition and other than the statement just referred to, there is no action or conduct of the judge which is referred to as indicative of bias or prejudice, except alleged erroneous rulings of the court. It is clear, however, that "the bias or prejudice which can be urged against a judge must be based upon something other than rulings in the case". Berger v. United States, 255 U.S. 22, 31, 41 S.Ct. 230, 232, 65 L.Ed. 481. Finally, 28 U.S.C.A. § 25 provides a means to obtain a hearing before another judge. The judge permitted appellants to file an affidavit forthwith, but appellants declined to do so. Whether failure to do so was a waiver of any rights they may have had in that respect, by appellants, we express no opinion. See Coltrane v. Templeton, 4 Cir., 106 F. 370; Utz & Dunn Co. v. Regulator Co., 8 Cir., 213 F. 315.

██ Appellants contend that the court erred in refusing to discharge the entire jury panel, after the statement of juror Stocking was made. The facts concerning this point are stated above. As can be seen the prejudicial statements, if any, made by Stocking were in answer to appellants' questions in the presence of the jurors. In these circumstances they cannot complain. 5 C.J.S., Appeal and Error, p. 173, § 1501.

██ The trial court directed that in drawing the names of jurors, all those from Clark County, Washington, should be excluded because appellants were well-known there, and in the interest of a fairer trial. In excluding the jurors from Clark County, the court, in its discretion committed no error. Jarl v. United States, 8 Cir., 19 F. 2d 891, 895; Frantz v. United States, 6 Cir., 62 F.2d 737, 738; Walker v. United States, 8 Cir., 93 F.2d 383, 392; 28 U.S.C.A. § 413. Likewise, there was no error in selecting jurors from the city in which court was being held, after the regular panel was exhausted. Cravens v. United States, 8 Cir., 62 F.2d 261, 269 et seq.

Many of the assignments specified relate to the admission of evidence. Pursuant to

an act of Congress, the Supreme Court of the United States promulgated certain rules in criminal cases on May 7, 1934, 28 U.S. C.A. following section 723a. 292 U.S. 660, 661. Rule IX thereof requires an assignment of errors to be filed by appellant in such a case as this. Rule XII thereof provides that each "appellate court may prescribe rules, not inconsistent with the foregoing rules, with respect to * * * the procedure on the hearing of appeals * * *." Rule IV thereof provides that upon the filing with the clerk of the appellate court of the duplicate notice of the appeal, "the appellate court shall, subject to these rules, have supervision and control of the proceedings on the appeal, including the proceedings relating to the preparation of the record on appeal".

Pursuant to that authority, this court adopted two rules relating to appeals in criminal cases, both of which relate to the preparation of the record on appeal. Our Rule 2 relates to the assignment of errors. Rule 2(a) requires appellant to "set out separately and particularly each error asserted and intended to be urged". Rule 2(b) provides that when "the error alleged is to the admission or to the rejection of evidence, the assignment of errors shall quote the grounds urged at the trial for the objection and the exception taken and the full substance of the evidence admitted or rejected". Rule 2(d) provides that "errors not assigned according to this rule will be disregarded, but the court, at its option, may notice a plain error not assigned".

■ These rules were adopted after forty years of experience to promote the efficiency and convenience of the court, and in order that assigned errors would not be misunderstood. Nine of the assignments specified fail to comply with these rules. While some of such assignments will be considered, we decline to consider a few of the more flagrant violations of our rules. Waggoner v. United States, 9 Cir., 113 F. 2d 867; Utley v. United States, 9 Cir., 115 F.2d 117, October 25, 1940.

■ Mrs. Walker, wife of appellant Walker, purloined a file from the home of appellant Sheehy which contained copies of letters and telegrams. She made copies of such letters and telegrams and delivered the copies she had made to one Grant of the state's security department. Grant gave the copies to Swenson, a post office inspector who made copies of such copies and showed such copies to appellants who ad-

mitted that they were copies of letters dictated by Walker and signed by Sheehy. The latter copies were admissible upon the admissions of appellants. Levey v. United States, 9 Cir., 92 F.2d 688, 692. The copies were lost and could not be introduced on the second trial. The original letters were then obtained from the addressees and introduced in evidence over appellants' objections that the letters were not properly identified. The loss of and the search for the copies was proven. Swenson testified that each of the letters was the original of one of the copies acknowledged by appellants, and they were, therefore, admissible as the best available evidence upon the admissions, without proof of receipt by the addressees. The argument that Swenson did not and could not know that the letters introduced were the originals of the acknowledged copies, is one going to the weight of the evidence and not its admissibility.

■ One Neiman testified that appellants, at least six times, tried to sell stock to his father; that he told appellants "that he did not want to buy stock because he could purchase the same from brokers in Seattle for 25¢ per share, and Walker and Sheehy wanted $1 per share". Appellants contend that Neiman was testifying as to the market value of the stock and his testimony was hearsay. The objection is obviously without merit.

■ During the trial, appellants moved to strike the testimony of witnesses Evans, Downing, Keester, Tarr, Smith, Moore, Yelton and Watrous, who testified as to the value of the United Collieries' property for commercially producing coal in order to prove the falsity of representations alleged to have been made by appellants. With respect to the admissibility of such evidence, appellants contend that it should have been shown preliminarily that such evidence was common knowledge or at least possible for appellants to have ascertained on inquiry. They cite no authority for their contention, and we find none. It was proper evidence to show that the representations were in fact false. Knowledge of falsity is a separate matter entirely. The point could arise only in connection with evidence showing knowledge, not falsity. The evidence was directed to the falsity of the representations, not knowledge thereof.

■ One Tietgens testified that he had been a member of the firm "E. W. Wagner & Company, a brokerage house in Chicago"

and that Walker had not been a partner in such firm and had had no interest therein. On cross-examination, he testified that there had been a written contract setting out the interests of all who were in the firm, and that he had a copy thereof in Chicago. Appellants moved to strike the testimony of Tietgens on the ground that it was not the best evidence, which motion was denied. We think the evidence was properly admissible. 2 Wigmore On Evidence, 2d Ed., § 1244, p. 853.

■ Six photographs of the United Collieries property taken in 1938 by the witness Tarr were offered in evidence by the government. Three of them were of a tunnel entrance; one was the picture of a collapsed shed; another of a mountain stream; another appears to be of some old timbers. The objection thereto is thus stated: "The objection by the defendants that these pictures were not any representation of the property as when charged in the indictment of 1936 and 1937. That they were not competent evidence and were very harmful to· the defendants". The objection was overruled.

No other evidence in the record was pointed out by either the government or the defendant relating to these pictures. In the absence of explanation the pictures were wholly without significance. No prejudice could have resulted to the defendants by the admission of these unexplained photographs.

It is urged that it was error to admit in evidence a telegram seized by the "Black Investigating Senate Lobby Committee" but there is nothing in the record to show that the telegram was seized by such committee.

For violation of our Rule 2 mentioned above, we decline to consider the assignments specified in Specifications 7, 8 and 9.

■ The sixth specification of error is almost unintelligible. A number of errors are urged thereunder in violation of our rule requiring each assignment and specification to cover only a single error. Some of the allegations of overt acts in the second indictment were kept sealed until after all evidence was in. The indictment was submitted to the jury with such seals removed. Appellants contend that error was committed in trying them on an indictment which was not the same as returned by the grand jury because such allegations were sealed during trial. We think there is no merit in this contention. Appellants further contend that their rights under the Sixth Amendment were violated because their right to subpoena witnesses was limited to those within the State of Washington. We are unable to find in the record any denial of any such right. Appellants point to an order of June 20, 1938, denying their petition of the same date for permission to subpoena witnesses outside the State of Washington, under the assignment specified. The order, however, refers to the earlier trial which resulted in a mistrial. We find no similar action taken with respect to, or request for, such subpoenas in, during or for the second trial which is involved here. Other points made under this specification have previously been discussed.

■ Appellants further contend that the court erred in denying their motion for a directed verdict under counts 1, 2 and 3 of the first indictment, because the letters therein mentioned were all written after sales of the stock had ceased, and rely on Merrill v. United States, 9 Cir., 95 F.2d 669. That case is not in point because in it there was nothing to show that the scheme continued after sales of the stock had ceased. Here, appellants continued their attempts to dispose of stock long after the letters were written. The motion was, therefore, properly denied. Lewis v. United States, 9 Cir., 38 F.2d 406, 415, 416.

■ Finally, it is contended that the court erred in failing to direct a verdict as to counts 5, 6, 8 and 9 of the first indictment. These counts were based on the scheme to obtain money and property from the stockholders and depositors of the bank at Vancouver, Washington. The indictment described the condition of the bank when the scheme was devised, and in so doing stated that a conservator therefor was appointed on May 3, 1934. The evidence disclosed that the appointment was made a year earlier. Appellants contend that there was a fatal variance between the charge and the proof. The allegation of the date was clearly immaterial. It had nothing to do with the charge of the crime. The crime charged was a scheme to defraud, by use of the mails, and if the allegation of the date had been entirely absent no different result would obtain with regard to the crime charged.

Affirmed.