**UNITED STATES v. 16,000 ACRES OF LAND, MORE OR LESS, IN LABETTE COUNTY, KAN., et al.**

**Civ. A. Nos. 1233, 1246, 1262.**

District Court, D. Kansas, Third Division.

Nov. 9, 1942.

HOPKINS, District Judge.

These cases have to do with the war. The government in furtherance of the war effort has taken possession of perhaps in excess of 140,000 acres of farm land in Kansas. On application of the government, appraisers were appointed, who have filed

648

reports from which the government has instituted countless appeals. These appeals should be heard and determined without further delay. The matter presently for consideration arises from affidavits filed by counsel alleging personal bias and prejudice of the judge of this court against the government and in favor of the landowners whose lands have been taken. The effect of these affidavits is to further delay, hamper and interfere with the due and orderly disposition of such suits, the burden and inconvenience of which will rest most heavily upon the large group of farmers whose homes and lands have been taken. The affidavits are made by Paul L. Aylward, Peter F. Caldwell and Jacob A. Dickinson, who style themselves special attorneys for the Department of Justice. The same attorneys certify that the affidavits are made in good faith.

■ Upon the filing of an affidavit of bias and prejudice it is the duty of the district judge to determine the legal sufficiency of the affidavit and, if insufficient, to refuse to disqualify himself. Scott v. Beams, 10 Cir., 122 F.2d 777. The affidavits have been examined with care and compel a decision that they are insufficient in law, and in time of filing.

A consideration of the facts' underlying the present controversy may be helpful. They are substantially these:

The government the past year and a half has condemned and taken possession of perhaps in excess of 140,000 acres of land in Kansas for war purposes. In the first instance appraisers representing the government made preliminary appraisements in connection with which efforts were made to procure the land at private sale. Where this failed petitions in condemnation were filed by the government asking for immediate possession. After this was done, and in due course, the government filed applications with the court for the appointment of appraisers. These applications were allowed and special efforts were made by the court to secure in each community those men best qualified to appraise the lands taken. In many, and perhaps most, instances the government suggested the names of such appraisers. In due time, after investigation by the appraisers their reports were filed. Following this the government in approximately two hundred fifty cases appealed from the award of the court appraisers.

The court, in order to take care of any and all emergencies which might arise in connection with such matters, and during the war emergency now pending, remained constantly on duty practically all of the past year. At the regular term of court in Fort Scott in May, the court suggested a special term in June to try the government cases. Counsel for the government stated they "could not be ready." Early in the summer, realizing the increasing number of government appeals, the court suggested that during the summer months the court could hear many of such appeals if a jury was not necessary. Counsel for the government responding to these suggestions stated "Washington insists on juries in all cases." Jury trials were not practicable during the summer because of excessive heat and because the farmers were too busy to attend trials. The judge of this district has had the cooperation of practically all lawyers of standing in dispensing with juries in nearly all cases, both civil and criminal.

Regular terms of court began the middle of September since which time this court has sought to try appeals in the condemnation cases.

In order to speed up matters and not delay payment to farmers whose lands have been taken, the court has been of the opinion that trials could be had much more speedily without juries and, while the court urged this procedure, it has not in any instance denied a jury trial. One trial, involving ten tracts from the Fort Riley reservation, was tried at Topeka. A motion by the government for a new trial was denied.

■ The applicable statute is 28 U.S.C.A. § 25, which according to all the decisions should be strictly construed, and reads: "Whenever a party to any action or proceeding, civil or criminal, shall make and file an affidavit that the judge before whom the action or proceeding is to be tried or heard has a personal bias or prejudice either against him or in favor of any opposite party to the suit, such judge shall proceed no further therein, but another judge shall be designated, in the manner prescribed in section 24 of this title, or chosen in the manner prescribed in section 27 of this title, to hear such matter. Every such affidavit shall state the facts and the reasons for the belief that such bias or prejudice exists, and shall be filed not less than ten days before the beginning of

the term of the court, or good cause shall be shown for the failure to file it within such time. No party shall be entitled in any case to file more than one such affidavit; and no such affidavit shall be filed unless accompanied by a certificate of counsel of record that such affidavit and application are made in good faith. The same proceedings shall be had when the presiding judge shall file with the clerk of the court a certificate that he deems himself unable for any reason to preside with absolute impartiality in the pending suit or action."

Several questions present themselves.

Do the affidavits establish personal bias against a party to the action (the government)? Did the party to the action (the government) file the affidavits? That is to say, has the government, as a party to the litigation, filed or authorized the filing of the affidavits in question? May an attorney who signs such an affidavit as a party to the action also certify it as attorney? May alleged errors, which are reviewable on appeal, form a proper basis for an affidavit of personal bias and prejudice against a party to the action? Did a suggestion by the court that "trials be had without juries" show personal bias or prejudice against the government? Did the refusal of the court to grant the right of inspection by the jury of lands involved in a trial show personal bias and prejudice? And, were the affidavits filed "in time" as required by the statute?

█ The significant word in the statute is the word "personal." By personal prejudice is meant an attitude against a *party* to a proceeding derived otherwise than through judicial proceedings. No opinion based upon evidence or the proceedings before a judge can form the basis of a personal prejudice against a party, as such term is used in the statute.

An examination of the authorities fails to disclose a single case which would lend support to the claim that these affidavits state facts sufficient in law. In considering the question of the legal sufficiency of the affidavits, there are certain guides which have been firmly fixed by the decisions. Soon after the enactment of section 25, the Supreme Court had occasion to comment on it. In Ex parte American Steel Barrel Co., 230 U.S. 35, 43, 33 S.Ct. 1007, 1010, 57 L.Ed. 1379, the court said: "The basis of the disqualification is that 'personal bias or prejudice' exists, by reason of which the judge is unable to impartially exercise his functions in the particular case. It is a provision obviously not applicable save in those rare instances in which the affiant is able to state facts which tend to show not merely adverse rulings already made, which may be right or wrong, but facts and reasons which tend to show personal bias or prejudice. It was never intended to enable a discontented litigant to oust a judge because of adverse rulings made, for such rulings are reviewable otherwise, but to prevent his future action in the pending cause. Neither was it intended to paralyze the action of a judge who has heard the case, or a question in it, by the interposition of a motion to disqualify him * * *."

In Re Lisman, 2 Cir., 89 F.2d 898, part of the syllabus reads: "A disqualifying affidavit against judge must state facts and reason for belief that personal bias or prejudice exists, and it must be shown that such prejudice exists against affiant, or in favor/ of his opponent as to preclude impartial judgment by recused judge." (Syl. 2).

In Ryan v. United States, 8 Cir., 99 F.2d 864, we read: "A judge to be disqualified must have a personal bias or prejudice against a party or in favor of an opposite party, and judicial rulings cannot ordinarily be made basis of charge of bias, since any error in such rulings may be corrected on appeal." (Syl. 10).

In Price v. Johnston, 9 Cir., 125 F.2d 806, 811, it was said: "The statute requires that the bias or prejudice be 'personal.' The allegations of the affidavit, as disclosed by the petition for the writ, do not indicate a 'personal' prejudice or bias against the accused, but charge an impersonal prejudice, and go to the judge's background and associations rather than his appraisal of the defendant personally. This is not enough under the statute, and the affidavit must be here held to have been insufficient under the law. The plain purpose of the statute 'was to afford a method of relief through which a party to a suit may avoid trial before a judge having a personal bias or prejudice against him or in favor of the opposite party. That sought to be relieved against is a personal bias or prejudice—a bias or prejudice possessed by the judge specifically applicable to or directed against suitor making the affidavit or in favor of his opponent.' Appellant's allegations reveal that 'the facts and reasons advanced in support of the charge of bias and prejudice do not tend to show the existence of a personal bias

or prejudice on the part of the judge toward petitioner but rather a prejudgment of the merits of the controversy * * *.' Henry v. Speer, 5 Cir., 201 F. 869, 871, 872. See, also, Wilkes v. United States, 9 Cir., 80 F.2d 285, 288, 289; Sacramento Suburban Fruit Lands Co. v. Tatham et ux. 9 Cir., 40 F.2d 894."

In Craven v. United States, 1 Cir., 22 F.2d 605, 607, the court said: "At most, then, the affidavit charges a 'bias and prejudice,' grounded on the evidence produced in open court at the first trial, and on nothing else. We hold that such bias and prejudice (if these be appropriate terms for a well-grounded state of mind * * *) is not personal; that it is judicial. 'Personal' is in contrast with judicial; it characterizes an attitude of extra-judicial origin, derived non coram judice. 'Personal' characterizes clearly the prejudgment guarded against. It is the significant word of the statute. It is the duty of a real judge to acquire views from evidence. The statute never contemplated crippling our courts by disqualifying a judge, solely on the basis of a bias (or state of mind * * *) against wrongdoers, civil or criminal, acquired from evidence presented in the course of judicial proceedings before him. Any other construction would make the statute an intolerable obstruction to the efficient conduct of judicial proceedings, now none too speedy or effective."

Reasons or comments of the judge in making judicial rulings do not constitute personal prejudice. Neither irritation upon the part of the judge nor comments upon the judicial tactics of a party or his counsel are sufficient to show personal prejudice, whether such comments be discreet or indiscreet. Scott v. Beams, supra.

Impersonal prejudice resulting from a judge's background or experience or prejudice against a particular type of litigation is not prejudice within the meaning of the statute. Price v. Johnston, 9 Cir., 125 F.2d 806, supra.

In Johnson v. United States, D.C., 35 F.2d 355, 357, the affidavit of prejudice related to "class of cases," and was held insufficient. In denying the application the court said: "Moreover, the prejudice charged is not directly alleged to be that personal, which alone by the statute is declared to afford basis for disqualification."

Applying the rule to the instant case, it was necessary to show personal bias and prejudice on the part of the judge against the United States, and that this prejudice was of a nonjudicial origin. The affidavit states facts in direct contradiction to those necessary to establish such personal bias and prejudice against the United States, or in favor of the unnamed landowners who are parties to the condemnation suits. The affidavit shows that respondent's entire interest and reason for his comments was that the interests of the United States be protected and that justice be afforded both to the United States and to the landowners. The most that could possibly be said for the affidavit is that the court indicated that from judicial proceedings before him it was his conclusion that the best interests of the United States were not being served by the tactics adopted by its counsel in the particular condemnation cases. Walker v. United States, 9 Cir., 116 F.2d 458; Refior v. Lansing Drop Forge Co., 6 Cir., 124 F.2d 440.

A recent and fine statement as to what is meant by personal bias and prejudice is contained in the concurring opinion of Judge Clark in the case of National Labor Relations Board v. Baldwin Locomotive Works, 3 Cir., 128 F.2d 39, at page 57. The opinion reads: "To begin with, respondent's counsel displays a complete misconception of the meaning of a partial mind. Such a mind is one that is closed to justice because some factor dehors the record prevents it from functioning. If it does operate, the fact that counsel does not agree with that operation * * * may indicate such matters as lack of education, legal or otherwise, lack of I. Q., lack of judicial temperament et cetera, but it does not spell lack of fairness. So the courts forbid any deduction of bias and prejudice from adverse rulings. * * *"

In the instant case it is impossible to sustain the affidavits as being sufficient in law without finding that as a matter of fact the writer of this memorandum has a personal bias and prejudice against the United States, the government of which he is an appointed official, and which he has served for many years. No such finding should be permitted to stand in any court unless and until the facts forming the basis of such allegations are overwhelmingly established and about which there is no reasonable doubt. An affidavit of this charac-

ter cannot be found to be sufficient in law without finding as a matter of fact that the judge against whom it is made has a personal bias and prejudice, not against a certain class of cases conducted by the United States of America, but a personal bias and' prejudice against his own government. Bias and prejudice, in order to be personal in the meaning of the statute, is not subject to division. It cannot be subdivided. It is entire. It must be personal against one of the parties to the lawsuit or personal in favor of the other party. It cannot be said to be personal if it applies only to a class of cases, for in that event the prejudice instead of being personal would relate to the nature of the proceeding itself. This court would be derelict in its duty if, knowing the allegations to be utterly unfounded, he sustained the affidavits in question. Under such circumstances he declines to desert his post of duty.

Were special attorneys authorized to make the affidavits and are the affidavits those of the (or a) party to the action? It will be observed that the statute requires two things. First, an affidavit must be made by a party to the action. Second, it must be accompanied by a certificate of counsel of record that such affidavit and application are made in good faith. "Whenever a party to any action or proceeding, civil or criminal, shall make and file an affidavit that the judge before whom the action or proceeding is to be tried or heard has a personal bias or prejudice either against him or in favor of any opposite party to the suit * * * and no such affidavit shall be filed unless accompanied by a certificate of counsel of record that such affidavit and application are made in good faith." 28 U.S.C.A. § 25.

 Strict and full compliance with these provisions of the statutes is required. Scott v. Beams, 10 Cir., 122 F.2d 777, 778; Cuddy v. Otis, 8 Cir., 33 F.2d 577.

The purpose of the statutory provision in reference to the requirement of a certificate of counsel of record is well set out in Newman v. Zerbst, 10 Cir., 83 F.2d 973, 974, where the court said:

"The affidavit did not 'state the facts and the reasons for the belief' of the existence of such bias or prejudice, and was not accompanied by a certificate of counsel of record that the affidavit and application were made in good faith as required by the statute. Moreover, counsel for petitioner in open court stated he could not make such a certificate. * * *

"It is a precaution against abuse, removes the averments and belief from the irresponsibility of unsupported opinion, and adds to the certificate of counsel the supplementary aid of the penalties attached to perjury."

The affidavits in the instant case are insufficient in law for the reason that the authority of the attorneys making the affidavits and executing the certificates of good faith was not attached thereto. The affidavits recite a conclusion that said attorneys are special attorneys of the Department of Justice and duly authorized and empowered to make the affidavits for and on behalf of the United States. This is not sufficient and clearly contrary to proper practice. If the Attorney General of the United States authorized the making and filing of these affidavits, his direction and grant of authority should have been a part of such affidavits.

Authority to condemn land is found in 40 U.S.C.A. § 257, and the War Emergency Provisions in 50 U.S.C.A. § 171. Both of these statutes make it the duty of the Attorney General to cause the proceedings to be commenced. The Attorney General and the United States District Attorney for the district have the duty of prosecuting all civil actions in which the United States is concerned. 28 U.S.C.A. § 485. In Re Confiscation Cases, 74 U.S. 454, 457, 7 Wall. 454, 457, 19 L.Ed. 196, it was said: "Settled rule is that those courts will not recognize any suit, civil or criminal, as regularly before them, if prosecuted in the name and for the benefit of the United States, unless the same is represented by the district attorney, or some one designated by him to attend to such business."

 5 U.S.C.A. § 310 authorizes persons specially named by the attorney general to conduct legal proceedings which the district attorney may be authorized to conduct. But, attorneys specially appointed under such statute are required to take the oath prescribed for district attorneys and to evidence their authority in the district. The three attorneys making the affidavits and the certificates to the affidavits have in no way evidenced their authority to act for the attorney general, and the affidavits contain no evidence of their authority either to make the affidavits or to execute the certificates of good faith. This is a fatal omission.

In connection with this point, that "no such affidavit shall be filed [by a party to any action] unless accompanied by a certificate of counsel of record that such affidavit and application are made in good faith", two separate and distinct personalities are necessary. One, the party or parties to the action who make the affidavit, and the other, counsel of record who certify that the affidavit and application are made in good faith. Here the same persons, the attorneys who allege they are special attorneys for the department of justice, but without evidencing their authority so to act, make the affidavits of personal bias and prejudice, and then attempt to execute the certificate of good faith. The affidavits are fatally defective for this reason.

Surely these alleged special attorneys cannot be said to be parties to these land condemnation suits. In Anchor Grain Co. v. Smith, 5 Cir., 297 F. 204, an affidavit by Walker, the president of the Anchor Grain Company, was held defective because Walker was not the party to the action. So here. These attorneys are not the party to the litigation. Also the good faith certificate of counsel is indispensable. Speaking of this requirement, in Beland v. United States, 5 Cir., 117 F.2d 958, 960, the court said: "This is no meaningless provision; its purpose is obvious. A judge may not consider the truth or falsity of allegations in an affidavit of personal prejudice or bias, and the provision requiring the certificate of a member of the bar is a precaution against abuse of the privilege afforded by the act. The 'good faith' certificate of counsel of record is indispensable and affidavits which are not accompanied by the certificate are insufficient and may not be filed. Cuddy v. Otis, 8 Cir., 33 F.2d 577; Newman v. Zerbst, 10 Cir., 83 F.2d 973; Currin v. Nourse, 8 Cir., 74 F.2d 273; Morse v. Lewis, 4 Cir., 54 F.2d 1027; Henry v. Speer, 5 Cir., 201 F. 869; Berger v. United States, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481."

As pointed out by Judge Murrah, a party could not avoid this requirement of double guaranty of good faith by counting that he, himself, was his own counsel. Mitchell v. United States, 10 Cir., 126 F.2d 550.

 As above noted the district attorney is the official representative of the government in litigation within the State of Kansas, and the affidavit, if made, should have been made by him. The cases under consideration appear to be directed entirely by the Department in Washington through special attorneys acting in this district.

It is apparent that the able district attorney is not consulted with respect to these matters. It is my considered opinion that if the district attorney of this district had had charge of these cases for the government, they would have been promptly disposed of, at the least possible expense, and with substantial justice to all parties. It is unfortunate indeed, and certainly regrettable that during a war emergency, when all are expected to give their time, endeavor and money to the war effort, that delaying tactics should be adopted by attorneys representing the government, at great expense to both the government and the landowners involved in this litigation.

In another condemnation suit it was said by Judges Hutcheson, Holmes and McCord in Re Keith, 5 Cir., 128 F.2d 908, 912: "For a speedy trial and justice in the cause at the end of it is still as clearly the right of the citizen in a court proceeding, when the controversy is with his government as when it is with a private citizen. It may not therefore be successfully contended that individuals may be dragnetted into condemnation suits en masse and because of the size of the dragnet made to wait upon administrative pleasure for trial until settlements and attempts at settlement, going on piecemeal, have been exhausted. Nor is it a sound reason for delaying the trial of such suits that dockets may be congested, for they are in their nature preferred proceedings and it is the duty of the government after instituting them, to leave no reasonable step untaken to bring them to as speedy a conclusion as is reasonably possible."

Under a charge of the character here made, this court is entitled to assurances from two independent sources (as required by statute) that it is made in good faith, namely, the affidavit of a *party* and the certificate of counsel who is his attorney of record. When some one other than the party attempts to make the affidavit for the party, such as in the case of a corporation, there must be a showing that such person has authority to make such affidavit.

In Cuddy v. Otis, 8 Cir., 33 F.2d 577, 578, an affidavit of disqualification, made by an attorney in fact, was held insufficient. In the opinion the court said:

"The affidavit of prejudice upon which petitioner relies is made by one J. L. Love, as attorney in fact for petitioner, is un-

accompanied by certificate of counsel, and states, as the facts and reasons for the belief that bias and prejudice exists, the rulings of respondent in denying certain applications for continuance filed on behalf of petitioner. No other basis for the charge of such bias or prejudice is shown.

"The controlling principles involved have been succinctly stated. A motion to disqualify a judge under section 25, Vol. 28, U.S.C.A. (section 21, Judicial Code), can only be made by a party to the litigation. Anchor Grain Co. v. Smith, [5 Cir.], 297 F. 204."

■ The certificate itself, being an indispensable part of the affidavit, is subject to strict construction. The certificate attached to these affidavits recites that the counsel of record, naming them (being the same counsel who made the affidavit), "hereby certify that the above affidavit and application made by the United States of America are made in good faith." The certificate is defective in form. United States v. Flegenheimer, D.C., 14 F.Supp. 584, 592.

May alleged errors reviewable on appeal be basis for disqualification?

■ In paragraph 3 of the affidavit the attorneys urge as a basis for belief that prejudice existed, that the judge endeavored to persuade them to waive jury trials in certain condemnation actions. It should be noted that the statements of the court all took place in open court, were made in the course of judicial proceedings before the court and consisted of statements of the court's reasons why it appeared to him that the best interests of the United States, as well as of the landowners, would be served if many of the cases could be tried by the court instead of by a jury, thereby saving expense both to the government and to the landowners and providing more expeditious disposal of the controversies. They show no bias, personal or otherwise, either in favor of the landowners or against the United States. As before stated, no order was made denying jury trials, and in fact, the only trials which have been held have been tried by juries.

It appears that others who realize the war emergency, favor waiving of juries. For instance, the Journal of the American Judicature Society for October, 1942, states that "Time Wasted in Court is Aid to Enemies. American Bar Association Speaks," and quotes a resolution of the House of Delegates of the American Bar Association to this effect: "To expedite the trial of cases and conserve man power during the war period, it is earnestly recommended to the Bench and Bar of the country that * * * whenever practicable jury trials be waived and issues of fact as well as of law be heard by the trial judge. * * * Since the necessity for saving time in court as elsewhere is now so pressing the American Bar Association resolution should stimulate timid judges. Witnesses and jurors and citizens thoroughly comprehend the need. Lawyers deceive only themselves in looking upon time wasted as government profit. The power and the responsibility is with the judges."

Was personal bias shown in refusing to allow the jury to be taken seventy miles on a two-day trip to view the land?

■ Petitioners urge that bias upon the part of the judge is shown by a statement made in open court in ruling upon their motion to have the jury view the land in question. "That the motion would be overruled because the request was unreasonable and unwarranted under the emergency confronting the country." The ruling was one resting in the discretion of the court and would be reviewable upon direct appeal from the final judgment. Coughlen v. Chicago, I. & K. Ry. Co., 36 Kan. 422, 13 P. 813; United States v. Meyer, 7 Cir., 113 F.2d 387. No bias or prejudice was indicated by the fact that the court overruled a motion in the ordinary course of a judicial proceeding. No objection was made by petitioners to the court's statement upon the ground that it was prejudicial to the rights of the government in the action then pending, but the complaint simply is that the court made an erroneous ruling. If the ruling was erroneous, it can be corrected upon appeal.

In addition to this the trial record shows it would have been entirely improper to have had the jury view the land because of the changes that had occurred.

■ Petitioners complain of the court's statement to government counsel on the hearing of their motion for a new trial in the jury cases tried at Topeka, Kansas, that counsel's attitude indicated that they did not know that there was a war on and that it was his opinion that nothing would be gained by ordering a new trial. If any error was committed in overruling the motion it can be corrected on appeal. There

654

is nothing in the court's statement "that it would be a useless waste of money to have another (new) trial" to justify even an inference of bias.

Complaint is made of the implication from the court's statement made in the argument of the motion for new trial that government counsel were trying to cover up evidence relating to the value of the land in controversy in the case then on trial. This statement was the court's conclusion from observing the tactics and conduct of counsel at the trial and cannot be said to be a basis for bias of any kind. It was a conclusion reached from hearing the evidence and observing the conduct of counsel in the case.

Complaint is made of the court's statement to government counsel in the hearing upon the motion for a new trial that if a colloquy took place at the bench the jury did not hear it and if this was true, the government counsel were attempting to put something misleading in the record by indicating that it did take place in the presence of the jury. This was a conclusion which the court had a right to draw from the conduct of counsel appearing before him and was the exercise of his judicial duty to see that the record spoke the truth. It indicates neither bias nor prejudice against either the government or its counsel.

Complaint is made that after the hearing of the motion for a new trial at Kansas City, Kansas, the court remarked to Paul L. Aylward, one of the petitioners, in the corridor outside of the courtroom, that he was a pettifogger, and had been pettifogging for two hours and a half. The court's statement was a judicial conclusion based upon the presentation of the motion for a new trial just concluded. Any reasonable person reading the transcript of the hearing upon the motion for a new trial would arrive at the same conclusion. The remark indicated no personal bias, either against the United States or against counsel. It was merely a criticism of the lengthy presentation of a motion which could have been presented in a short time.

The affidavits state that counsel endeavored to show that the jury had arrived at its verdict by the quotient method. The court during a recess inquired of three jurors in chambers as to how they had arrived at their verdicts. What of it! It is difficult to understand counsel's urging of these facts to indicate bias and prejudice against the government in this litigation. The federal rule is well settled that a federal juror will not be permitted to impeach his verdict by his testimony (McDonald v. Pless, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300; Department of Water and Power v. Anderson, 9 Cir., 95 F.2d 577), and this rule recently was extended to include the deliberations of an administrative board. See National Labor Relations Board .v. Botany Worsted Mills, 3 Cir., 106 F.2d 263. But apart from the federal rule, if the rule in Kansas were to be applied, the question of determining whether there had been a quotient verdict would be one entirely and alone for the determination of the trial court. Fitch v. State Highway Commission, 137 Kan. 584, 21 F.2d 318; Claggett v. Phillips Petroleum Co., 150 Kan. 191, 92 P.2d 52. The three jurors were permitted to testify at length and their testimony established beyond question that the verdict was properly arrived at and the quotient method was not used. Despite the fact that this evidence was clearly inadmissible, the court permitted counsel to inquire of the jurors for the purpose of satisfying their own curiosity. The court's action indicated no bias or prejudice of any kind against either the United States or its counsel. The effort upon the part of the government's counsel to introduce this clearly inadmissible testimony upon the hearing of the motion for a new trial formed a part of what the judge concluded was "pettifogging."

Petitioners complain of a colloquy between respondent and counsel for the government in open court in connection with the merits of a petition to set aside a written option in a pending action. The court frankly stated that it appeared that an unfair advantage had been taken of the petitioner (landowner) and that the option obtained was inequitable. The statement indicates neither prejudice in favor of the petitioner nor against the United States or its counsel.

A blanket charge consisting of conclusions, not of facts, that the respondent on various occasions wrongfully charged that the special attorneys for the Department were unfair, unjust, etc., are allegations of conclusions rather than facts, as was pointed out by the Circuit Court of Appeals in Scott v. Beams, supra [122 F.2d 788], where the court said: "Otherwise the

affidavit abounded with general allegations of hostility of the court, abuse of witnesses and threats to have them incarcerated, and encouragement of attorneys for other litigants in their abuse of such witnesses; but these were conclusions, not statements of fact. For instance, one litigant might regard a statement or several statements of the presiding judge as constituting hostility, abuse of witnesses and threats of incarceration, and encouragement of counsel in their abuse of witnesses, while another litigant might regard such a statement or statements otherwise. Except the statement of the court in respect to the contract not being regarded as contemptuous and as to it probably not being against public policy, the affidavit did not set out any statement of the court, either in direct language or in substance. It requires no elucidation to make plain that the affidavit fell far short of stating facts showing bias and prejudice of the court and therefore it failed to comply with the requirement of the statute."

Were the affidavits filed in time?

This is a technical point and would not be considered if the affidavits were otherwise sufficient. Since they are not, it becomes the duty of the court to consider and analyse this question.

■ The statute provides that "every such affidavit * * * shall be filed not less than ten days before the beginning of the term of the court, or good cause shall be shown for the failure to file it within such time." The affidavits (in several cases) in question were handed to a deputy clerk of the court at Topeka, Kansas, in the first division of the court, at or about closing time of the office, on the 30th day of October, 1942. At that time they were by the deputy marked "filed" although they were in cases pending in the third division of the court located at Fort Scott. The term of court commenced at Fort Scott at 10 o'clock Monday morning, November 9, 1942. In Kansas there are three divisions of the court. The first division is located at Topeka, the second at Wichita and the third at Fort Scott. 28 U.S.C.A. § 157. The statute provides for terms of court at Fort Scott the first Monday in May and the second Monday in November. The second Monday of November, 1942, was November 9th. The affidavits could not have been received or filed in the Fort Scott office of the court until Monday, November 2d. The

fact that the deputy in Topeka marked the affidavits "filed" did not constitute a filing of them in another division of the court. The cases in which the affidavits were filed were third division cases which had never been transferred from the third division to the first division by "stipulation of the parties or * * * order of the court," as is required by the statute. The statute provides: "Any civil cause, at law or in equity, may, on written stipulation of the parties or of their attorneys of record signed and filed with the papers in the case, in vacation or in term, and on the written order of the judge signed and filed in the case in vacation or on the order of the court duly entered of record in term, be transferred to the court of any other division of the same district, without regard to the residence of the defendants, for trial." 28 U.S.C.A. § 119.

In Walsh & Wells v. City of Memphis, D.C.Tenn.1940, 32 F.Supp. 448, decided as late as April, 1940, it was held that: "Consent of both parties is necessary to empower district judge to transfer a cause from one division of the district to another division, and such consent of parties must be evidenced by written stipulation filed of record."

■ No stipulation has ever been filed in these cases. The fact that the deputy clerk at Topeka was accommodating and accepted such papers for transfer to Fort Scott was not a compliance with the statute requiring that the affidavits be filed "not less than ten days before the beginning of the term." Since the statute provides that the affidavits must be filed "not less than ten days before the beginning of the term" it necessarily follows that they must be filed in the division in which the case is pending ten days before the beginning of the term to be held in that division. Even if depositing the affidavits in the Topeka office had been equivalent to filing them in the Fort Scott division, they were not so deposited ten full clear days before the beginning of the Fort Scott term, and there was in this respect a failure of compliance with the statute.

This question was discussed at some length in the case of Seawell v. Gifford, 22 Idaho 295, 125 P. 182, 183, Ann.Cas. 1914A, 1132, where a statute requiring candidates to file nomination papers "at least thirty days, and not more than sixty days, prior to the primary" Laws 1909, p.

157, was interpreted to mean that "at least thirty days must intervene between the date of the filing and the date of the primary." Papers filed on the 30th of June for a primary to be held on July 30 were held not in time. The court said: "Said section of the statute provides that such papers must be filed at least 30 days prior to the primary election. Now, if such papers must be filed 30 days prior to the day of election, they cannot be legally filed within the 30 days next preceding the date of election. In other words, they must be filed 'without' that period, and not 'within' it. That is the reasonable construction of said statute; in fact, it is too plain to require construction. If an act must be done 30 days prior to a certain day, if it is done within that 30-day period, it certainly is not done 30 days prior to the commencement of such period."

The Kansas case, Garvin v. Jennerson, 20 Kan. 371, is to the same effect. It was there held: "A deposition to be read on the trial of a case in the district court must be filed *at least* one day before the day of trial; and the statute means thereby, that one *clear* day must intervene between the filing of the deposition and the commencement of the trial at which it is to be read. To properly compute the time within said statute, both the day on which the deposition is filed, and the day of the trial, are to be excluded."

 Under the rule announced in these decisions, these affidavits had to be filed on or before October 29th in the Fort Scott (third) division. Not having been so filed in the division wherein the cases are pending, they were not in time.

 The facts are that the affidavits were considered and denied the morning of the first day of the term (November 9th), all other business of the court was transacted and the court adjourned at 3 p. m., until the following Monday, all within seven days after the affidavits could have been received in the clerk's office at Fort Scott. Surely the statute means what it says: " * * * not less than ten days before the beginning of the term of the court." These affidavits to be in time had to be filed on or prior to October 29th. Time is a matter of substance and not merely one of form. United States v. Parker, D.C., 23 F.Supp. 880.

There is but one conclusion, which is that the affidavits are insufficient. Doubtless their filing will result in further delay. "Justice delayed is justice denied." The landowners are entitled to "just compensation." Unreasonable delay is depriving them of that just compensation to which they are entitled.

This court has no personal bias or prejudice against the government. In fact, it is strongly conscious of its feeling of reverence and respect for our great government. Such feeling, however, would not constitute a bias or prejudice against the landowner. This court has an abounding impatience toward waste in governmental affairs. It has an ever present and continuing consciousness that every man and woman in this country should be doing everything in their power in the war effort. It believes that the Kansas farmers who were evicted from their homes and farms more than a year ago should not be further delayed in receiving their just compensation through tactics by counsel for the government.

An appropriate order may be drawn denying the affidavits as in all respects insufficient.