## Burton v. Commonwealth.

January 11, 1949.

Andrew V. Fox for appellant.

A. E. Funk, Attorney General, and Zeb A. Stewart, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE HELM—Affirming.

The appellant, Earl Burton, was convicted of robbery and his punishment fixed at three years in the State Reformatory. He asks that the judgment be reversed because the trial court failed to grant him a new trial on the grounds of newly discovered evidence, and the admission of incompetent testimony.

The evidence for the Commonwealth discloses that the prosecuting witness, Carey Preston, was sitting in

Greenlee's place in Maysville on December 20, 1947, drinking beer with a friend, Paul Harrington, when the appellant, defendant below, a stranger, dressed in a striped suit, came in and sat down at their table. Preston says Burton:

"Got to talking about where he was from * * *. I ordered up a bottle of beer for him and we sat there and drank our beer. * * * I was coming on up town and he got up and comes out with me and walks up with me and we stopped at Browning's place and drank another bottle of beer. We * * * came on up to Market Street and went in to the Tavern and got another bottle of beer. * * * I came on out. I had left a pair of shoes up at the shop, so I was going up to get them. He asked me to buy him a pint of whiskey and I told him I didn't have any money to spare. * * * I went on up to the shoe shop and he followed me up to where I got my shoes. I got my money and paid for them and came on down * * * to catch a bus there at Market Street * * *. He followed me down there and at that alley just above Wall Street he had a little knife in his hands and pushed it up against me and said he was going to cut my guts out. * * *

"He led me on down the alley and when we got down there he brought it up about the whiskey and said that I had lied to him because I had some money and before I could get to explain he knocked me down. He hit me in the nose, and then I got up and about the time I got up he knocked me down again. He knocked me down three or four times and instead of me getting up the last time I got partly up and made a run for it and hollered for help. He overtook me and knocked me down, cutting me on through my cheek. He drug me around behind a culvert there and I felt him going through my pockets. He took my bill fold out of my pocket and took my money and walked off. I stayed there until he had walked on up the alley and then I got up and walked down to the Lower End and washed the blood off of me and I started back up town and looked in at Mr. Greenlee's and he was sitting there drinking a beer and I came up and met two officers and told them about it and they told me to come up and report it and I did. I told them what happened and the officers went down and he was standing out on the corner by Mr. Greenlee's, he and Fred Boling. That is where they got him."

At the shoe shop, Preston had taken out his bill fold in which he had twenty-five dollars—two ten's, a five, and some change. He identified Burton for the officers and saw them arrest and search him.

Paul Harrington identified Burton as the man who came into Greenlee's, sat at their table and drank beer with them.

Police officers Sauer and Whiteman testified that sometime after six o'clock that day they went to Greenlee's with Preston; that he identified Burton; that Burton was wearing a brown striped suit; that they arrested and searched him and found a ten dollar bill, a five, and some change; a small knife, and a piece of paper with the words: "O. K. from the Paducah Chief of Police." The piece of paper with this wording was introduced in evidence over the objection of the appellant.

Burton's defense was an alibi. He denied knowing Preston or having robbed him. He stated that he was not working; that he was visiting his sister, Mrs. Rose Wood, and her husband, Ray Wood; that they lived in a double house with Fred Boling; that he did not leave his sister's home until about 5:30 in the afternoon. He says that he was wearing a striped suit. He admitted that he had been convicted of a felony—breaking and entering—in Ohio.

Fred Boling did not know when Burton had left his sister's home that afternoon. Rose Wood and Ray Wood testified that Burton left their home about five or five-thirty.

The trial court permitted the Commonwealth's Attorney to cross-examine the appellant as to his having been in Paducah. Exception was saved to this testimony.

Appellant contends that the words "O. K. from the Paducah Chief of Police" tend to show that he had been charged with some crime in Paducah. These words indicate rather that there was no criminal charge pending against him there. This testimony should have been omitted, but is not substantially prejudicial.

Appellant, on his motion for a new trial, filed affidavits of O. N. Greenlee, owner of Greenlee's place, and Glen Phillips, employee of Greenlee, dated April 27,

1948, saying, in substance, that they did not believe Burton had been in Greenlee's place on December 20, 1947, until fifteen to thirty minutes before the officers arrested Burton. These statements are not positive, are cumulative, and do not relate to the time and place of the assault and robbery. The record shows that there were two trials of this case. It seems that the appellant, by due diligence, could have had Greenlee and Phillips as witnesses on the second trial.

The evidence was sufficient to establish the guilt of appellant. The jurors, who were the judges of the weight and credibility of the testimony, saw and heard the witnesses. They believed the testimony for the Commonwealth.

The judgment of the lower court is affirmed.