**UNITED STATES**

v.

**VALENTI et al.**

Cr. No. 310–52.

United States District Court
D. New Jersey.
March 19, 1954.

Grover C. Richman, Jr., U. S. Atty., Newark, N. J., George W. Harrington, Sp. Asst. to U. S. Atty., Elizabeth, N. J., for the United States.

Samuel P. Orlando, Camden, N. J., for defendant Anthony Valenti.

Mortin Stavis, Newark, N. J., for defendant and movant under affidavit, Sylvia Y. Neff.

MADDEN, District Judge.

This matter is now before the Court pursuant to the filing, on November 20, 1953, of an affidavit of bias and prejudice as against the writer as the trial judge about to preside at the jury trial of Criminal Indictment No. 310–52. The affidavit in question, which seeks the disqualification of this writer, invokes the operation of Title 28 U.S.C.A. § 144.[1]

While the statutory provision of Congress providing for the recusation or disqualification of a trial judge by the filing of an affidavit of bias or prejudice is a remedial measure having for its purpose assurance to litigants of a fair and impartial trial before a judge of the United States, it has been well established that the statute is to be given the utmost of strict construction in order to safeguard the judiciary from frivolous attacks upon its dignity and integrity, and to avoid interruption of its ordinary and proper functioning.[2] Such statute is not intended or permitted to enable a litigant who has filed such an affidavit to paralyze the action of a judge who has presided in a prior case against the affiant, or over a question in it, by the interposition of a motion to disqualify him.[3] In the case of Cole v. Loew's Inc., D.C., 76 F.Supp. 872, 876, 877, certiorari denied, 340 U.S. 954, 71 S.Ct. 570, 95 L.Ed. 688, in disposing of an affidavit of bias and prejudice filed against him, Judge Yankwich, ably reviewed the then existing case law in the Federal System from which he distilled four guiding rules, or norms, for the disposition of such an affidavit, and with which this Court is in accord:

"(1) The mere filing of an affidavit does not oust the judge from the cause.

"(2) The judge has the right to determine the legal sufficiency of the affidavit.

---

[1]. "Bias or prejudice of judge

"Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

"The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith." Title 28 U.S.C.A. § 144, as amended May 24, 1949, c. 139, 65, 63 Stat. 99.

[2]. Berger v. U. S., 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481; U. S. v. 16,000 Acres of Land, More or Less, in La Bette County, Kan., D.C., 49 F.Supp. 645; Curtis v. Utah Fuel Co., D.C., 59 F.Supp. 680, affirmed per curiam, 3 Cir., 148 F.2d 340, certiorari denied 326 U.S. 724, 66 S.Ct. 29, 90 L.Ed. 429; Burall v. Johnston, D.C., 53 F.Supp. 126, affirmed 3 Cir., 146 F.2d 230, certiorari denied 325 U.S. 887, 65 S.Ct. 1567, 89 L.Ed. 2001; Sanders v. Allen, D.C., 58 F.Supp. 417; Scott v. Beams, 10 Cir., 122 F.2d 777; Skirvin v. Mesta, 10 Cir., 141 F.2d 668.

[3]. 28 U.S.C.A. § 144 (formerly 25), In re Beecher, D.C., 50 F.Supp. 530; Taylor v. U. S., 9 Cir., 179 F.2d 640; Berger v. U. S., supra; Ex parte American Steel Barrel Co., 230 U.S. 35, 33 S.Ct. 1007, 57 L.Ed. 1379; U. S. v. Shibley, D.C., 112 F.Supp. 734, 748.

"(3) The bias or prejudice must be personal, i. e., antagonism or opposition to the litigant, or favoritism for his opponent.

"(4) Definite views on the law, adverse rulings in the case on trial, or adverse rulings against the suitor in other cases or in cases involving similar facts do not constitute such disqualification, even in a criminal prosecution."

It is, therefore, the duty of the judge before whom an affidavit of bias or prejudice is filed to determine in the first instance whether or not such affidavit is legally sufficient, and if insufficient to refuse to disqualify himself.[4] The test which is thus to be applied in determining the legal sufficiency of an affidavit of personal bias or prejudice was established as early as 1920 by the Supreme Court of the United States in Berger v. United States, 255 U.S. 22, 33, 41 S.Ct. 230, 233, 65 L.Ed. 481, where it was stated: "Of course the reasons and facts for the belief the litigant entertains are an essential part of the affidavit, and must give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment."[5]

The affidavit of bias and prejudice filed in this matter is made on behalf of the defendant, Sylvia Y. Neff, which affidavit contains a certificate of good faith attached by her counsel of record, as required by the statute; a succinct statement of the allegations of such lengthy affidavit is set forth in the margin,[6] the

---

4. Scott v. Beams, 10 Cir., 122 F.2d 777; Tucker v. Kerner, 7 Cir., 186 F.2d 79; Berger v. U. S., supra; U. S. v. Gilbert, D.C., 29 F.Supp. 507.

5. See also, Foster v. Medina, 2 Cir., 170 F.2d 632, certiorari denied 335 U.S. 909, 69 S.Ct. 412, 93 L.Ed. 442.

6. Specification of Facts Alleging Personal Bias and Prejudice:

1. Public statements of the judge in court after the verdict of jury (May 28, 1952) following a prior trial in which present defendant Neff was then a defendant for perjury, directed against her and her attorney clearly evidenced personal prejudice against both as it then existed and existed during trial, and does now still exist. This shows bias and prejudice in its entirety.

2. Bias and prejudice evidenced by the foregoing statements reflected itself by the judge's conduct during the entire course of prior proceedings in which this defendant was involved and during the trial especially where "a large amount of discretion is relegated to the trial judge." Viz.:

(a) Sentence of 10 years imposed on a grandmother is the most severe of any imposed for perjury in a federal court.

(b) Delay in imposing sentence while defendant confined in jail. Verdict May 28, 1952 and sentence June 20, 1952, thus denying her opportunity to apply for bail or have his conduct reviewed by another judicial body.

(c) The participation of the trial judge exceeded the legitimate bounds of judicial discretion and evidenced an usurpation of his judicial office amounting to a prosecution of the defendant. The numerical ratio of questions propounded by the court clearly establishes this contention, according to the tabulation made in this affidavit.

3. Subsequent to the foregoing conviction, defendant Neff was subpoenaed to appear as a witness in another case then pending, U. S. v. Valenti. "During the course of this trial the judge refused to permit me to consult with my attorney regarding my constitutional rights to refuse to answer certain questions. For refusing to answer while in tears, and without counsel, I was charged and convicted of contempt and sentenced to one year in jail."

4. The judge has shown his bias and prejudice against the attorney for defendant Neff, who represented her in the two proceedings referred to above. "The said bias and prejudice towards my attorney have of course had direct bearing upon me." Reference is made to statements after verdict, and during trial. Also mistaken statement by judge of testimony, during colloquy with Neff's attorney.

5. Impounding of conspiracy indictment (10–22–52) resulting from conferences with U. S. Attorney. There is no ground in federal rules for such impounding except "until the defendant is in custody or has given bail." This indictment was not released until a year later, 10–23–53. Also Judge's statement to Courier-Post newspapers regarding the reasons for impounding of the indictment of this case.

original of which is contained in the file of the Clerk of this Court.

The Court considers the certificate of good faith and the reasons for failure to file the affidavit within the statutory time as being sufficient in law and will, therefore, deal directly with the allegations contained in the affidavit itself.

It is the settled law, that an affidavit to disqualify a judge on the grounds of bias or prejudice must state facts and reasons which tend to show personal bias or prejudice regarding the justiciable matter pending, as distinguished from conclusions of the affiant, and must give support to a charge of a bent mind that may prevent or impede the impartiality of his judgment.* Where an affidavit is filed for such purpose, the question to be resolved is whether the affidavit asserts facts from which a reasonable mind might fairly infer a personal bias or prejudice on the part of the judge.[7] It is a "personal sense" to which the statute is directed.[8] The affidavit must state more than mere conclusions, that is, it must state facts and reasons which logically support the conclusion of bias or prejudice

so contended for.[9] If the alleged facts support the conclusion asserted, and the affidavit is legally sufficient, the trial judge shall proceed no further, and another judge shall be assigned to hear the merits thereof.[10] It is to be noted, however, that the facts as alleged in the affidavit are to be taken as true for the purpose of ruling on the legal sufficiency of such affidavit.[11]

The public statements of the trial judge in open court following a jury verdict against this defendant in a prior and different criminal prosecution could have in no manner adversely affected the rights of this defendant. The trial was concluded and the verdict rendered; the pending proceeding is a new and different proceeding.

The interdiction of the law is not the mere possession of definite views regarding the law, or the conduct of a party, or even a "prejudgment" of the matters in controversy, but rather an attitude of personal enmity towards the party affiant, or in favor of the adverse party to the detriment of the former.[12] A judge cannot be disqualified merely because he believes in upholding the

---

NOTE: Affidavit based its conclusion of bias and prejudice in this regard on the mere fact of newspaper statement.

6. "While it is submitted that a number of the items hereinabove set forth in this affidavit, standing alone, show personal bias and prejudice on the part of (the judge), the basis of this affidavit is upon the cumulative effect of all the statements and conduct as herein set forth."

7. "The instant indictment involves an alleged conspiracy, I am informed by my counsel that in a trial for conspiracy the scope of judicial discretion, particularly on matters dealing with the introduction of evidence, is probably broader than in an ordinary criminal trial. For these reasons it is of special importance that the trial upon the pending indictment be freed from any possibility in any form of bias and prejudice upon the part of the trial judge."

8. Demand made that the judge proceed no further in the instant case and that another judge be assigned to hear such proceedings.

* Opere citato.

7. Hurd v. Letts, 80 U.S.App.D.C. 233, 152 F.2d 121; Eisler v. U. S., 83 U.S.App. D.C. 315, 170 F.2d 273, certiorari dismissed, 338 U.S. 883, 70 S.Ct. 181, 94 L.Ed. 542.

8. Foster v. Medina, 2 Cir., 170 F.2d 632, certiorari denied 335 U.S. 909, 69 S.Ct. 412, 93 L.Ed. 442; Eisler v. U. S., supra.

9. U. S. v. Pendergast, D.C., 34 F.Supp. 269; Curtis v. U. S., D.C., 91 F.Supp. 206.

10. Cole v. Loew's Inc., D.C., 76 F.Supp. 872; U. S. v. Pendergast, supra.

11. U. S. v. Gilbert, D.C., 29 F.Supp. 507; U. S. v. Costea, D.C., 52 F.Supp. 3; Cole v. Loew's Inc., supra; Berger v. U. S., supra; Allen v. DuPont, D.C., 75 F.Supp. 546; U. S. v. Pendergast, supra; U. S. v. Onan, 8 Cir., 190 F.2d 1, certiorari denied 342 U.S. 869, 72 S.Ct. 112, 96 L.Ed. 654.

12. Price v. Johnston, 9 Cir., 1942, 125 F. 2d 806.

law, even though he says so with vehemence.[13] As was pointed out in the case of In re J. P. Linahan, Inc., 2 Cir., 1943, 138 F.2d 650, 652, "The judge * * * owes a duty to act in accordance with those basic predilections inhering in our legal system. The standard of dispassionateness obviously does not require the judge to rid himself of the unconscious influence of such social attitudes." In the case of United States v. Fujimoto, D.C., 101 F.Supp. 293, the court held, that an affidavit of personal bias and prejudice which alleged that the trial judge had made certain statements during a naturalization address preceding a trial of defendant-affiant for conspiracy for alleged violations of the Smith Act, 18 U.S.C.A. § 2385, characterizing the goal of the Communist Party, of which defendant had become the chairman in Hawaii, as being designed to seize the powers of Government by and for a minority by violence and undemocratic means, was insufficient to sustain the affidavit in law, in view of the fact that the statements of the judge were merely correct statements of the law in accordance with the previously enacted Internal Security Act, and with opinions of the Supreme Court of the United States.

The opinion after the prior verdict expressed in this court in no manner demonstrates a personal bias or prejudice against this affiant in a new and different criminal prosecution as a matter of law in ruling upon the legal sufficiency of this affidavit. As was stated by Chief Judge Major, for the Court of Appeals for the 7th Circuit, in Tucker v. Kerner, 186 F.2d 79, 84:

"Whether such an opinion was justified is beside the point. At most, it could only represent a judicial opinion and furnishes no support for the charge made in the affidavit. Every member of this court, every member of any court, every judge, when he hears a case or writes an opinion must form an opinion on the merit and oft times no doubt an opinion relative to the parties involved. But this does not mean that the judge has a 'personal bias or prejudice.' If it did, the disqualification of judges would be a matter of every-day rather than the unusual and extraordinary occurrence which the statute is designed to meet."

Of like import and urgency is the opinion in the case of Eisler v. United States, supra, 170 F.2d at page 278, wherein it was said:

"Upon review of such an affidavit we do not hesitate to uphold the ruling of the court below that the affidavit should be stricken, for it does not establish bias and prejudice in the personal sense contemplated by the statute, assuming truth in all the facts stated. Prejudice, to require recusation, must be personal according to the terms of the statute, and impersonal prejudice resulting from a judge's background or experience is not, in our opinion, within the purview of the statute."

It is to be noted that the Supreme Court denied *certiorari*.

An examination of the cases construing the statute in question discloses that the affidavit is for the sole benefit of a "party", to a pending proceeding, and no other.[14] "Reasons or comments of the judge in making judicial rulings do not constitute personal prejudice. Neither irritation upon the part of the judge nor comments upon the judicial tactics of a party or his counsel are sufficient to show personal prejudice, whether such comments be discreet or indiscreet." U. S. v. 16,000

---

13. Baskin v. Brown, 4 Cir., 1949, 174 F.2d 391.

14. Cole v. Loew's Inc., supra, and the foregoing cases, gives an extensive discussion of the question. See also, United States Law Review, October, 1933, pp. 487 to 496.

Acres, etc., supra [49 F.Supp. 650].[15] The express terms of the statute clearly embrace only a party to a pending cause.[16] It is true that during the course of the prior and rather lengthy trial, certain colloquies occurred between the court and counsel for the defendant-affiant, but this is no more than customary practice in the trial of a case, and does not constitute sufficient basis upon which to predicate personal bias or prejudice of a judge.[17]

 With respect to the asserted personal bias and/or prejudice, for the affidavit herein uses the conjunctive, while the statute uses the disjunctive, of this trial judge regarding prior proceedings against this affiant in this court, the case of Craven v. United States, is peculiarly apropos.[18] There, as here, the defendant sought to recuse by affidavit a judge for personal bias or prejudice for asserted facts which are similar to those made here.[19] One of the defendants in that case, Craven, charged with conspiracy to violate the liquor laws, filed an affidavit of bias and prejudice against the trial judge. A colleague of the presiding trial judge struck the affidavit as being legally insufficient. On appeal, the court sustained the ruling below, saying at page 607 of 22 F.2d:

"A general and epithetical charge of bias, by questions not set forth, is idle. Equally frivolous is the contention that the judge in charge of a criminal calendar cannot confer with an assistant United States attorney without grounding an inference of improper scheming against the right of the defendant to a fair and impartial trial. We are surprised that experienced counsel should have certified an affidavit containing such a charge.

"The sixth paragraph, asserting personal bias against persons charged with violation of the liquor laws, alleged to be indicated by excessive fines and penalties, is without significance; for (among other reasons) the actual fines and penalties imposed by the judge are

---

15. Cf. Clawans v. Waugh, 10 N.J.Super. 605, 609, 77 A.2d 519, 521 (Co.Dist., three judge statutory court, 1950) wherein it is said:

"The fact that a judge has expressed irritation with an attorney during a trial, or has indicated a dislike for him or his manner of conducting trials, or has said that the attorney should be held in contempt would not justify a challenge to his capacity to sit in judgment on the attorney's cases nor would such fact justify a judge in disqualifying himself from the performance of his sworn duty to administer justice in the actions within the jurisdiction of his court."

16. 28 U.S.C.A. § 144, supra; Sanders v. Allen, D.C., 58 F.Supp. 417; Note 19 post.

17. See Cole v. Loew's Inc., supra, for an extensive discussion.

18. Reported in 1 Cir., 1927, 22 F.2d 605, 606, certiorari denied 276 U.S. 627, 48 S.Ct. 321, 72 L.Ed. 739.

19. "(4) That during the course of said trial he exhibited personal bias and prejudice against your affiant and in favor of the United States of America by questions the court asked the witnesses upon the stand.

"(5) That during the trial the judge was in conference with the assistant United States attorney, out of the presence of the defendant, thereby exhibiting a personal bias and prejudice against the affiant.'

"(6) Your affiant believes that said judge has a personal prejudice and bias against him, and in favor of the United States of America, in that he, said judge, exhibits a violent prejudice against all defendants charged with violation of the liquor laws, as indicated by excessive fines and penalties imposed in various cases by him, and your affiant, being charged with an offense against the liquor laws, as indicated, is subject to his personal bias and prejudice.

"(7) Your affiant believes that said judge, designated to sit in the trial of the indictment against him in this district, cannot and will not give him a fair and impartial trial, and that he will use every effort within his power to secure his conviction, and his manner of dismissing the jury and setting the case down for a new trial indicated a partisan intention to secure a conviction of your affiant at all hazards."

not stated, and, if they had been stated, no possible inference would be warranted that they were 'excessive,' without detailed knowledge of the nature of the offenses for which they were imposed.

"The seventh paragraph is purely prophetic, and adds nothing of fact or reason.

"At most, then, the affidavit charges a 'bias and prejudice,' grounded on the evidence produced in open court at the first trial, and on nothing else. We hold that such bias and prejudice (if these be appropriate terms for a well-grounded state of mind, [Berger v. U. S.], 255 U.S. [22] 42, 41 S.Ct. [230] 236, 65 L.Ed. 481) is not personal; that it is judicial. 'Personal' is in contrast with judicial; it characterizes an attitude of extra-judicial origin, derived from non coram judice. 'Personal' characterizes clearly the prejudgment guarded against. It is the significant word of the statute. It is the duty of a real judge to acquire views from evidence. The statute never contemplated crippling our courts by disqualifying a judge, solely on the basis of a bias (or state of mind, 255 U.S. 42, 41 S.Ct. 236, 65 L.Ed. 481) against wrongdoers, civil or criminal, acquired from evidence presented in the course of judicial proceedings before him. Any other construction would make the statute an intolerable obstruction to the efficient conduct of judicial proceedings, now none too speedy or effective."

It is to be noted that the Supreme Court denied *certiorari*.

■■■■ With respect to the sentence imposed upon this defendant-affiant in prior proceedings, such was done only after adequate pre-sentence investigation within a reasonable time, and in accordance with the established criminal statutes and the established calendar and practice of the court. Any asserted abuse in regard thereto was reviewable and is in fact being reviewed elsewhere.

■■■■ The cases sustaining the right of a trial judge to examine witnesses during the course of a judicial proceeding, in order to clarify the testimony and crystalize the issues in the search for truth, are legion and require no citation here. This is especially true, where the trier of fact is a jury. Frivolous characterizations asserted by way of arithmetical ratios do but beg the question and add nothing to an unsupported charge of personal bias or prejudice.

■■■■ The reference by affiant that the pending indictment relates to a "conspiracy," and that as such, it, more so than in "ordinary criminal trials," involves a wide scope of judicial discretion, particularly in matters dealing with the introduction of evidence, contains within itself its own refutation; for while this court is at a complete loss to determine what is meant by the phrase "ordinary criminal trials," for all trials under the rules of the Supreme Court are either Civil or Criminal, the statute [20] is not aimed at any speculated or anticipatory abuse of judicial discretion.

■■■■ Affiant while contending for legally sufficient assertion of facts and reasons for a showing of personal bias and prejudice bases her affidavit upon the "cumulative effect of all statements and conduct as herein set forth." [21] As indicated above, none of the items of the said affidavit are, in the opinion of the court, sufficient legally to sustain the affidavit; and as it is axiomatic, that a whole can be no greater than its component parts, it must fail on this ground also and be stricken. Furthermore, as pointed out hereinbefore, the affidavit to be sufficient must be based upon facts buttressed by reasons, and

20. 28 U.S.C.A. § 144 ante.

21. See specification of fact No. 6, note 6 ante.

not a suppositious "cumulative effect," which is at best a mere conclusion *arguendo*.

As was said ever so pertinently in the Tucker case, supra, 186 F.2d at page 85: "No good purpose could be served in prolonging this opinion by citing or discussing other cases. After all, the statute is plain, and a judge when * * * passing upon an affidavit charging 'personal bias or prejudice' is entitled to and must look solely to the facts alleged in support of such charge. His duty to deny the affidavit on insufficient allegations is no less imperative than to allow it on sufficient allegations."

It is the finding of this court, therefore, that the affidavit of personal bias and prejudice filed in this matter is insufficient in law, and it is ordered stricken.

There are additional factors, however, which urge themselves upon the court's attention in this case, and imperatively demand in good conscience that they be given somewhat extended consideration.

 Standing alone as isolated or unrelated instances, or factors, exerting upon the entire course of proceedings in this matter, each its particular preemptive impressionistic effect upon the mind of the trial judge would not be and, indeed, should not be, sufficiently compelling, or even persuasively diverting to such extent of influence that personal bias or prejudice would displace impartial conduct and prostitute the judges' judicial oath of office.[22]

Such factors as above enumerated and there considered would not adversely affect or, I trust, mislead this writer from the fullest and most sincere exercise of good faith in the performance of his judicial duties, with the utmost objectivity and dispassionateness of which he is capable and able as a supposed rational human being, to bring to judicial proceedings involving the rights and liberties of others, including this defendant; for she is of no less nor of greater importance than any other, who, as a member of our society stands before this court as a defendant in a criminal prosecution. Indeed, this court is ever mindful of the fundamental truth of the proposition that justice is a respecter of no persons before the law; and that in order to administer the judicial system as the ultimate arbiter between contending interests and render justice, the Court must be free of all bias or prejudice of a personal nature; and that the paramount and all prevading attribute and objective of those entrusted with the awesome responsibility of dispensing judgment on their fellow-men is the conscientious pursuit of justice.[23] "To practice the requisite detachment and to achieve sufficient objectivity no doubt demands of judges the habit of self-discipline and self-criticism, incertitude that one's own views are incontestable and alert tolerance toward views not shared. But these are precisely the presuppositions of our judicial process. They are precisely the qualities society has a right to expect from those entrusted with the ultimate judicial power." So spoke Mr. Justice Frank-

22. "I, ———— ————, do solemnly swear (or affirm) that I will administer justice without respect to persons, and do equal right to the poor and to the rich, and that I will faithfully and impartially discharge and perform all the duties incumbent upon me as [United States District Court Judge, for the District of] ———— according to the best of my abilities and understanding, agreeably to the Constitution and laws of the United States;" and "that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I

will bear true faith and allegiance to the same; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties of the office on which I am about to enter. So help me God." Title 28 U.S.C.A. § 372 and Title 5 U.S.C.A. § 16; Amended June 25, 1948, c. 646, 62 Stat. 907, 28 U.S. C.A. § 453.

23. Adams v. U. S. ex rel. McCann, 1942, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268, 143 A.L.R. 435, setting aside, 2 Cir., 126 F.2d 774.

furter for the Supreme Court of the United States in Rochin v. California, 342 U.S. 165, 171, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183. Perhaps, the idea is nowhere more accurately and concisely stated than by Judge Frank, when he said: "Democracy must, indeed, fail unless our courts try cases fairly, and there can be no fair trial before a judge lacking in impartiality and disinterestedness. If, however, 'bias' and 'partiality' be defined to mean the total absence of preconceptions in the mind of the judge, then no one has ever had a fair trial and no one ever will. * * * Only death yields complete dispassionateness, for such dispassionateness signifies utter indifference."[24]

However, a trial judge by reason of the very nature of his office, as the presiding officer of the trial court cannot function in the abstract completely unmindful and unaware of variegated interests and divergent personalities. For the trial of a criminal case being a proceeding in a tribunal of law for the vindication of the collective rights of society and the protection of the common weal has as an essential attribute of its nature, and coextensively therewith, the protection of the rights of the accused individual members of such society, based upon the presumption of innocence of each defendant and the burden upon the Government to prove his or her guilt beyond a reasonable doubt. And having for its particular proximate subject matter the alleged wrongful conduct of an individual member of that society, and being attended, as it must, with the present and immediate impact of the forensic affray with its resurgent human emotions, does not lend itself always, unfailingly, and under all circumstances to the calm, calculated, and deliberate objectivity of participation therein by the trial judge with stoic passivity, or ac-

cording to some magical legalistic formula, and wholly aside from all possible preconceptions of human conduct and behavior in some rarified atmosphere bespeaking only of mystical serenity and metaphysically abstract contemplation. There is not, nor can there ever be, in the law governing the affairs of men, a legalistic vacuum. And as has been said so aptly, "A judge of a court is human, and, like every other man, must have his likes and dislikes, * * *. In so far as he is not swayed by these natural emotions to do any man an injustice, the fact that he has them in common with his brother man does not disqualify him from trying a case."[25]

A decent respect for the dignity of the law as well as for my own judicial office restrains me from availing myself of this occasion which, while not of my own making, now affords opportunity, indeed, almost injudicious invitation, not only to sustain but to offer justification for my conduct, and of this court, regarding this defendant in prior proceedings involving criminal prosecution. Such an undertaking would selfishly exceed my province in this matter, and would be at least injudicious if it would not constitute legal error. The rulings of this court have been subjected to appellate review according to law so providing. That is the democratic and proper course. While those matters which have been asserted as establishing my personal bias or prejudice as a trial judge have heretofore been found to be insufficient as a matter of law, and were disposed of in accordance with the foregoing authorities, it may be considered well within judicious propriety, on the other hand, to acknowledge the aura of odium and opprobrium which has been generated about this defendant and the charge against her by others who had not under their care and supervision the

24. In re J. P. Linahan, 2 Cir., 1942, 138 F.2d 650, 651, 652, which contains a scholarly discussion; "For the law will not suppose a possibility of bias or favor in a judge who is already sworn to administer impartial justice and whose authority greatly depends on that presumption and idea." 3 Blackstone's Commentaries 361.

25. May v. May, 1912, 150 Ky. 522, 150 S.W. 685, 686.

prior proceedings involving this particular defendant. This court is not unaware of the extensive serialized newspaper comment in the immediate community of this court, and throughout the State of New Jersey, as well as other states, tending to focalize public interest in certain collateral matters and immaterial incidences arising during the course of the prior prosecution in this court and against this defendant. So, also, the fact that this court was literally deluged with personal letters of intemperate expression, pro and con, during and after the prior trial characterizing the real issues in such prosecution as "communism" and "red-baiting," in no way or manner was permitted to vary the charge in the indictment of the Grand Jury against this defendant, and in regard to which indictment specific issues were presented to the jury by the court for their function as the fact-finding body. However, these matters, I trust, in no manner affected or influenced the conduct of such prior proceedings, nor were they of any particular interest, either personal or otherwise, to this court. For this is a Court of Law and Justice, and not a forum for individual speculations or public opinion. Additionally, and quite possibly as a consequence of wide-spread public interest in the criminal prosecution against the defendant, unusually large crowds were in daily attendance evidencing more than a mere curious regard for the ordinary functioning of a criminal proceeding. This, however, is the established right of the public to be present at every trial providing, of course, such presence does not detract from the dignity of the court or interfere with its proper functions. This situation in no manner affected or influenced the conduct of such prior proceedings, nor was it of any particular interest, either personal or otherwise, to this court. So also, with respect to the extra-judicial statements of Union "Strike" bulletins, and "Defense" bulletins issued out of the Local of which defendant was then the Secretary, during the trial and in the immediate vicinity of this court characterizing the criminal prosecution against this defendant as a "witch hunt," a "red-herring trial," and the court itself as a "Kangaroo Court," while if not contemptuous *per se*, as bordering upon brazen intimidation of the court and the trial judge thereof, were reasonably calculated to incite disrespect for the trial judge, and manifested scandulous disregard and ridicule for the ordinary and proper functioning of the court in the administration of justice in the then pending criminal proceeding. And yet I trust that this activity, while it went judicially uncensored for reasons not here pertinent, in no manner affected or influenced the conduct of such prior proceedings, nor was it of any particular interest, either personal or otherwise, to this court. Furthermore, the nearest approach to conduct which, in the ordinary course of human events, would be most calculated and likely to disturb the requisite judicial decorum of a trial judge was that in fact against which this writer most assiduously and diligently guarded to insure and preserve such decorum, and that was the obviously surly conduct and attitude of defense counsel towards this Court, coupled as it was with the condescending complacency of both defendant and her defense attorney throughout the trial; in particular, the needless argumentiveness of the defense attorney, and his evident disrespectful pugnacity during and after required final rulings by the trial judge on matters and questions of evidence according to what the latter conceived to be the established rules of law. Quite evident, was defense counsel's design and purpose to create, for the benefit of the jury, an atmosphere of arbitrary persecution, and distort the real issues in the case. However, this court was ever mindful that it was the defendant, and not the defense attorney, who was on trial, and the conduct above referred to in no manner affected or influenced the conduct of such prior proceedings, nor was it of any particular interest, either personal or otherwise, to this court. For

this court was not then, is not now, and God willing never shall be, consciously or artfully engaged in any act or word seeking popularity for the performance to the best of its ability and according to oath and conscience of what it verily conceives and believes to be its sworn judicial duty.

 It is worthy of note also, that it is not only the right, but the sworn duty of a trial judge to preside in a particular matter within the jurisdiction over which he is the presiding officer when there is no legally sufficient foundation in fact and basis in reason and law for his disqualification or recusation.[26] Personal predilections of a trial judge in this regard are immaterial where his qualifications to preside in a particular proceeding are called into question by a party on asserted grounds of personal bias or prejudice; but he may recuse himself, *sua sponte*, for compelling moral reasons, or where there exists in his own mind some real doubt as to the impartiality which he, as an individual, may exert on the matter then before him as a judicial officer.[27]

The matters of complaint above set forth, together with the additional factors alluded to, did not affect or influence this court in any manner adverse to the rights or interests of this particular defendant. But the danger inherent in the inevitable collation of such elements in view of a new criminal prosecution seems to generate an accumulative effect with crescendo-like proportions giving rise to some serious and grave concern and misgivings with respect to the continuance of complete personal impartiality of judgment or impression, which may or could effect objectivity of judicial considerations. For the incessant momentum incident to all activity concerned with human events, while not at all times clearly delineated and detailed for all to perceive, inevitably traces its patterns by way of collation and relation across isolated incidents, however seemingly unimportant or unrelated, drawing unto itself the composite aspects of ultimate personal impression. And human nature being what it is, and being projected as it must through individual personalities, it is imperative that those entrusted with the awesome responsibility of administering justice should, so far as is reasonably possible, insure the fullest measure of dispassionate consideration and impartiality, rather than chance even the slightest taint or opprobrium however obscure, albeit real, to cast shadow or divert the fullest, fairest, impartial trial of the innocence or guilt of an accused in accordance with the ever fundamental tenets of Law, the highest ideals of our Anglo-American jurisprudence, and traditional concepts of justice.

 It is my considered conclusion, therefore, in accordance with the foregoing authorities, and for the latter reasons which I have herein assigned, that as a matter *sua sponte*, I deem it my duty in all good conscience to voluntarily stand aside in my judicial capacity, upon my own motion, and permit Criminal Indictment No. 310–52, being a case in which United States of America is against Anthony Valenti and Sylvia Y. Neff, as defendants, to find audience before another judge of this United States District Court of the District of New Jersey, and it is hereby so Ordered.

---

26. 48 C.J.S., Judges, § 93, page 1079; Curtis v. U. S., D.C.N.J.1950, 91 F.Supp. 206; and see cases cited, *ante.*

27. Sanders v. Allen, D.C.S.D.Cal.1944, 58 F.Supp. 417.