IN THE MATTER OF HARRIET BOUSLOG SAWYER, ALSO KNOWN AS HARRIET BOUSLOG, AN ATTORNEY AT LAW.

NO. 3044.

ARGUED JANUARY 16, 1956.　　　　DECIDED JANUARY 19, 1956.

TOWSE, C. J., STAINBACK AND RICE, JJ.

OPINION OF THE COURT UPON SUGGESTIONS OF
DISQUALIFICATION BY STAINBACK, J.

This matter involves a complaint of the Bar Association of Hawaii, under rule 19, filed July 8, 1954, against Harriet Bouslog Sawyer, a member of the bar of this Territory, which involves two charges: (1) That while appearing as counsel of record for certain defendants in a certain case in the United States District Court for the District of Hawaii, and during the trial of said cause, she made a speech at Honokaa, Hawaii, on December 14, 1952, at a public gathering wherein she is alleged to have severely criticized the court and the judge and alleged that unless the trial was stopped certain new crimes would be created by such trial; and (2) Alleged improper conduct in connection with her interview of a juror and her motion for a new trial in connection with the interview with such juror.

Thereafter there were filed the report of the legal ethics committee of the Bar Association of Hawaii, a number of memoranda including two by the Bar Association, one by J. Garner Anthony in behalf of Harriet Bouslog, and an answering memorandum on behalf of the Bar Association by William Barlow, all relating to the legal sufficiency of the charges; an order to show cause was filed July 8, 1955; a motion to dismiss the order to show cause was filed Octo-

ber 19, 1955. The motion to dismiss the order to show cause was heard and overruled, as was a motion for reconsideration, with Mr. Chief Justice Towse dissenting as to those matters relating to the juror's affidavit. A return to order to show cause and a number of motions for continuance were filed.

Thereafter, suggestions of disqualification of Associate Justices Stainback and Rice, and affidavits relative thereto, were filed on January 11, 1956, these suggestions being based upon section 9573 of the Revised Laws of Hawaii 1945.

The first question is whether the provisions of section 9573, Revised Laws of Hawaii 1945, are applicable to a justice of an appellate court. In *Whittemore et als.* v. *Farrington et als.*, 41 Haw. 52, this court by a majority opinion held that such section is not applicable to a justice of the supreme court and we see no reason for overruling this holding.

The Hawaiian statute, as appearing in section 9573 of the Revised Laws of Hawaii 1945, providing for the disqualification of judges on the grounds of personal bias or prejudice is a duplicate of the Federal Act approved March 3, 1911. (Chap. 231, 61st Cong. Sess. III, p. 1090.)

Section 9573 provides: *"Disqualification of judge; bias or prejudice.* Whenever a party to any suit, action or proceeding, whether at law, in equity, criminal, or special proceeding, shall make and file an affidavit that the judge before whom the action or proceeding is to be tried or heard has a personal bias or prejudice either against him or in favor of any opposite party to the suit, such judge shall be disqualified from proceeding therein. Every such affidavit shall state the facts and the reasons for the belief that bias or prejudice exists and shall be filed before the trial or hearing of the action or proceeding, or good cause shall be shown for the failure to file it within such time.

No party shall be entitled in any case to file more than one affidavit; and no affidavit shall be filed unless accompanied by a certificate of counsel of record that the affidavit is made in good faith. Any judge may disqualify himself by filing with the clerk of the court of which he is a judge a certificate that he deems himself unable for any reason to preside with absolute impartiality in the pending suit or action."

The wording of the Act does not by specific provision include an appellate court and the construction of the federal statute has held that it does not apply to an appellate court.

"The statute authorizing affidavit of personal bias or prejudice of judge does not apply to the Circuit Court of Appeals." (*Millslagle* v. *Olson,* 128 F. [2d] 1015.)

In *Duke* v. *Committee on Grievances of the Supreme Court,* 82 F. [2d] 890, 895, it is stated: "Appellant some time ago filed in this court an affidavit under the provisions of section 21 of the Judicial Code (28 U. S. C. A. § 25), charging all the judges of this court with personal bias and prejudice. Because we agreed with the Circuit Court of Appeals in the First Circuit that the section does not apply to appellate tribunals, we rejected the affidavit. Kinney v. Plymouth Rock Squab Co., 213 F. 449."

"The only question considered in this case is whether or not section 21 applies to appellate courts and it is determined in this case that it does not." (*Saunders* v. *Piggly Wiggly Corporation,* 1 F. [2d] 582, 584, citing numerous cases.)

It is elementary that the adoption by the territorial legislature, as in this case, of a statute of another jurisdiction carries with it the judicial interpretation of the statute by that jurisdiction. (*Territory* v. *Ota,* 36 Haw. 80; *Carter* v. *Gear,* 16 Haw. 242, aff'd 197 U. S. 348.)

"Indeed, it is the well-settled general rule that when a

statute is adopted from another state or country the judicial construction already placed on such statute by the highest courts of the jurisdiction from which it is taken is treated as incorporated therein so as to govern its interpretation." (50 Am. Jur., *Statutes,* § 458, pp. 471, 472.)

However, assuming that the statute be applicable to justices of an appellate court, the suggestion of disqualification of a judge for bias or prejudice must be made before an appearance on the merits or before the submission of preliminary motions by either party preparatory to the trial or the objection is deemed waived. Such suggestions were not made in this case until after a number of rulings relating both to important matters of substance as well as continuances. The statute specifically provides that such affidavit shall be filed before the trial or hearing of the action or the proceeding. Unless the matters of disqualification are unknown to the party at the time of the proceeding and are newly discovered, there can be no excuse for delaying the filing of the suggestion until after rulings are made in the matter, particularly where such rulings may be considered adverse to the movant.

"We hold that an affidavit of prejudice is timely made if filed and called to the attention of the court before it has made any ruling on any litigated or contested matter whatsoever in the case, either on a motion, demurrer, or plea of the party making the affidavit, or on the motion, demurrer, or plea of any other party to the action, of the hearing of which the party making the affidavit has been given notice, otherwise it is not timely made. We cannot permit a litigant to test the mind of the trial judge like a boy testing the temperature of the water in the pool with his toe, and if found to his liking, decides to take a plunge. The plunge into the pool of litigation with an affidavit disqualifying the trial judge must be made on a belief of prejudice theretofore entertained, and not on any subse-

quent discovery of such belief of prejudice resulting from an adverse ruling." (*State* v. *Armijo,* 50 P. [2d] 852, 855.)

In *Laughlin* v. *United States,* 151 F. (2d) 281, where the affidavit was held back until after the judge had ruled on sundry matters and after he had on appellant's request granted a continuance, it was properly held a waiver of appellant's statutory right to a consideration of his affidavit of prejudice.

*Gregory* v. *Hartley,* 113 U. S. 742, where the question was whether a petition for removal from a state court was timely filed, it was held under the wording of the statute that there cannot be a removal after a hearing on a demurrer to a complaint.

*McGill* v. *Coomer,* 309 Ky. 103, 118 Pac. 40, it was stated: "This Court has uniformly held that objection to a trial judge * * * is a question of jurisdiction and to be available must be made before an appearance to the merits of an action, or before the submission of preliminary motions by either party preparatory to a trial."

In *State* v. *Superior Court,* 114 Wash. 335, 195 Pac. 25, it was held that the motion to be timely must be made and called to the attention of the court before it has made any ruling whatever in the case either on the motion of the party making the affidavit of prejudice or on the motion of any other party to the action.

A similar holding is that of *State* v. *Clifford,* 65 Wash. 313, 118 Pac. 40, and there are numerous other decisions to like effect, particularly in the Federal courts.

Thirdly, assuming that the statute does apply to justices of the supreme court and that the suggestions of disqualification were timely filed, we come to the merits of the affidavit alleging bias and prejudice upon the part of the justices.

An affidavit to disqualify a judge on the grounds of bias and prejudice must state facts and reasons for the

belief that personal bias and prejudice exist and strict compliance with the statute is required. It must state more than mere conclusions; it must state facts and reasons which logically support the conclusion of bias and prejudice. Not one of the statements set forth in the affidavit for the disqualification of Mr. Justice Rice indicates personal bias or prejudice directly against the affiant herself. Such bias or prejudice to disqualify a judge must be specifically applicable to or directed against the party making the affidavit or in favor of his opponent. (*Price* v. *Johnston,* 125 F. [2d] 806; *United States* v. *Valenti,* 120 F. Supp. 80.) Impersonal prejudice resulting from a judge's background, association or experience is not prejudice within the meaning of the statute. (*Eisler* v. *United States,* 170 F. [2d] 273; *Price* v. *Johnston, supra.*) Such bias and prejudice are not personal if applicable to a class of cases or particular types of litigation. (*United States* v. *16,000 Acres of Land, etc.,* 49 F. Supp. 645.)

"The interdiction of the law is not the mere possession of definite views regarding the law, or the conduct of a party, or even a 'prejudgment' of the matters in controversy, but rather an attitude of personal enmity towards the party affiant, or in favor of the adverse party to the detriment of the former." (*United States* v. *Valenti,* 120 F. Supp. 80, 85.)

"Prejudice, to require recusation, must be personal according to the terms of the statute, and impersonal prejudice resulting from a judge's background or experience is not, in our opinion, within the purview of the statute." (*Eisler* v. *United States,* 170 F. [2d] 273, 278.)

The affidavit submitted as the basis for the suggestion of disqualification of Mr. Justice Rice purports to set forth facts which support the affiant's conclusion that he is biased and prejudiced, but it is noted that nowhere in said affidavit does the affiant state factually or even

allege information and belief that Mr. Justice Rice has at any time or place ever by action exhibited, or by word spoken or written indicated, any personal bias or prejudice toward said affiant. Therefore, her statement therein that he "has a bent of mind against" her and "a personal bias and prejudice towards" her "which make it impossible for him to be impartial and to give assurance of impartiality in this proceeding," are merely suppositious.

While contending for legally sufficient assertion of facts and reasons for showing of personal bias and prejudice of Mr. Justice Rice, affiant bases her affidavit upon the cumulative effect of all actions and conduct of the justice as therein set forth; and, as in *U. S.* v. *Valenti et al.,* 120 F. Supp. 80 (D. N. J. 1954) none of the items is, in the opinion of the court, sufficient legally to sustain the affidavit and "as it is axiomatic, that a whole can be no greater than its component parts, it must fail on this ground * * *."

Furthermore, as pointed out in the said *Valenti* case, *supra,* the affidavit to be sufficient must be based upon facts buttressed by reasons, and not a suppositious cumulative effect, "which is at best a mere conclusion *arguendo.*"

Affiant makes her supposition and draws her conclusions that Mr. Justice Rice has a personal bias and prejudice against her from the fact that affiant had been the attorney for the ILWU for many years, that this is a labor organization of 25,000 workers and that there had been many labor disputes with their employers which had led to strikes, picketing and claims of violence on both sides to the controversy; that litigation had resulted to enjoin picketing and efforts made to enjoin activities of law enforcement agencies and judges, including Mr. Justice Rice when judge of the circuit court of the fifth judicial circuit, and that by reason of these activities the ILWU had been criticized and denounced by virtually all the leading industrial, financial, commercial and political

organizations in the Territory. She further alleges that Lihue Plantation Company was one of the largest employers of ILWU members; that Mr. Justice Rice's family (exclusive of Mrs. Rice) from 1946 to 1949 held substantial quantities of stock in Lihue Plantation and in American Factors' plantation which owned a majority of stock in Lihue, and that for a period of 25 years prior to his accession to the bench Mr. Justice Rice had been retained by Lihue as its general counsel. It further alleges that he has long been a member of the Republican Party, of the Kauai Chamber of Commerce and of the American Legion, and that each of said organizations had opposed, criticized and denounced the ILWU as aforesaid. It further sets out that during the strike of sugar workers in 1946 Mr. Justice Rice, then circuit judge, issued "an *ex parte* injunction limiting picketing and other activities by the members of the ILWU in such strike"; that Jack Hall, a leader of the ILWU, issued a leaflet referring to Mr. Justice Rice as a "lawless judge" etc; that 12 leaders of the aforesaid strike were indicted by the grand jury and charged with the felony of contempt for violation of the injunction issued by Mr. Justice Rice, and that affiant appeared before Mr. Justice Rice as attorney for these 12 strike leaders in 1946; that upon refusal of Mr. Justice Rice to continue the hearing on the validity of the proceedings until the supreme court had decided a similar case from Judge Wirtz, an action for injunction was filed against him in the United States District Court; that a preliminary injunction was issued against Judge Rice which was later dissolved and that thereafter the criminal contempt charges were reduced from felonies to misdemeanors. Affiant further states that when Judge Rice's term was about to expire the ILWU opposed his renomination and reappointment; that affiant has frequently represented Jack Hall, the author of the pamphlet against Judge Rice, in litigation; that

because of such activities and criticisms of him by Jack Hall, affiant believes that Mr. Justice Rice "is so embedded in conflict involving the antagonism of employer interest and working class interests" that he has a bent of mind against her and a personal bias and prejudice toward her which make it impossible for him to be impartial and to give assurance of impartiality in this proceeding.

Certainly these activities of affiant and Jack Hall and the judicial proceedings and actions of Mr. Justice Rice could not by the widest stretch of imagination be construed to show any personal bias or prejudice on the part of Mr. Justice Rice toward affiant. They could at most show an impersonal prejudice resulting from the judge's background, association or experience which is not sufficient within the meaning of the statute. (*Eisler* v. *United States; Price* v. *Johnston; United States* v. *16,000 Acres of Land, etc., supra.*)

The affidavit setting forth the basis for Mr. Justice Stainback's bias and prejudice is defective in that it does not contain an allegation that the justice is *personally* biased or prejudiced against the movant. See cases cited *supra*. Although during the argument an offer was made to file a second affidavit alleging such personal bias on the part of Mr. Justice Stainback, this would not be allowed even if the statute were applicable. Such offer is, therefore, refused. As to the legal sufficiency of the allegations, the affidavit attaches to it an excerpt from the testimony of Mr. Justice Stainback before a United States Senate Committee on January 8, 1954, and states that the excerpt was intended by Mr. Justice Stainback to refer to the affiant and the federal judge referred to was intended by Mr. Justice Stainback to be the Honorable Jon Wiig, Judge of the United States District Court for the District of Hawaii, and that the statement attributed to affiant referred to and described in the testimony was meant by

Mr. Justice Stainback to refer to and describe the speech allegedly made by affiant at Honokaa, Hawaii, on or about December 14, 1952, and that in making the statement set out in exhibit A attached to the affidavit Mr. Justice Stainback meant to say that affiant in her Honokaa speech stated that Judge Wiig was not giving and would not give a fair trial in the matter then pending before him and that affiant made that statement as a part of an attempt by her and others to bring discredit upon all the courts of the Territory of Hawaii, including the United States District Court.

The statement quoted was as follows:

"Senator Kuchel. . . . Again I wonder whether you suggest that circulation of that pamphlet in the courts of the territory should be used as another argument against Hawaiian statehood.

"Governor Stainback. I think it shows the extent to which the Communist people down there attempt to raise race prejudice and attempt to bring into disrepute the courts of the territory. The lawyer actually goes out and says, 'You cannot hope for justice before this Judge.' And that was a federal judge.

"The whole conduct was brought in to bring into contempt the courts and administration of justice. It is like Mr. Jack Hall's pamphlet which I referred to yesterday, when I removed him from police commissioner. I think the whole thing is part of an attempt to discredit the courts of the territory."

A pamphlet had just been referred to in my testimony — all of which testimony is contained in an exhibit admitted in evidence at the argument of the instant proceeding. This pamphlet was one circulated and sold in the judiciary building itself at the time of the hearing of the habeas-corpus proceeding of the two Hawaiian boys who had been convicted of the murder of Mrs. Wilder. It was a reprint of a pamphlet entitled "The Navy and the Massie-

Kahahawai Case" with a preface attempting to show that the convictions of Majors and Palakiko were the result of racial prejudice. As stated in my testimony, the lawyers (one being Mrs. Bouslog) said that they had nothing to do with the circulation of this pamphlet in the judiciary building.

This was a brief extract quoted by affiant from rather voluminous testimony by Mr. Justice Stainback at a hearing on Hawaiian statehood and was a continuation of his testimony showing the activities of the Communists in Hawaii in their propaganda efforts first against the then governor and secondly against the courts of the Territory.

Prior to the reference to this pamphlet Senator Smathers had questioned the witness, Mr. Justice Stainback, at length regarding an article by Victor Riesel "Inside Labor" appearing in the "Daily Mirror" (a New York newspaper) in February, 1950, on the activities of the Communists in the Territory of Hawaii. Without giving in detail Mr. Riesel's article as it appears in the testimony upon statehood for Hawaii, suffice it to say the article stated, among other matters: "For several years, Gov. Ingram M. Stainback has been one of the country's most sophisticated and intelligent opponents of Communist activities who were assigned to infiltrate Hawaii and the Democratic Party there by district 13 of the Communist Party, U. S. A., headquarters in San Francisco — as far back as 1937," and the article then calls the attention of the President to the activities of the Communists against the then governor because of his campaign against the Communist group; that though Philip Murray had removed the Communist members from the CIO, in Hawaii these Communists (the ILWU was at that time a member of the CIO) were making "an unusually effective smear campaign" against the governor and that unless his column "can convince President Truman, when it crosses his desk,

that he's about to get some very queer advice from Hawaiian 'Democrats'" the result of this "effective campaign" will be "to put on Truman's desk a recommendation that Governor Stainback not be reappointed next August. Instead, he's to be kicked upstairs into the Chief Justiceship of the Hawaiian Supreme Court — to replace the jurist who retires June 1."

From the justice's testimony as a whole it would appear that the "prejudice" of the justice in question is directed against Communists and is not a "personal prejudice" against affiant who is casually mentioned as the lawyer for certain alleged Communists who were then on trial in federal court.

To summarize:

1 — The provisions of section 9573 of the Revised Laws of Hawaii 1945 relating to disqualification of judges because of bias or prejudice are not applicable to justices of the supreme court; however, a justice in addition to being disqualified by reason of relationship, pecuniary interest or previous judgment as set forth in section 84 of the Organic Act, may excuse himself from participating in a case where he feels that fairness and justice require such withdrawal.

2 — The suggestions of disqualification of the justices for bias or prejudice were not timely made; in fact, not until after affiant had received an adverse ruling on the sufficiency of the complaint did she make her affidavit of bias and prejudice against the two justices ruling against her. Would it be unreasonable or unfair to infer that these affidavits were made because she had tried the "pool of litigation" with her toe and found it too cool for a plunge, as did the little boy testing the temperature of the water? (*State* v. *Armijo, supra.*)

3 — The affidavit attempting to disqualify Mr. Justice Stainback is at least technically defective and that refer-

ring to Mr. Justice Rice is not only technically defective but does not in the remotest degree set forth any facts which would show such personal bias or prejudice against the affiant.

Therefore, for the reasons set forth above, we reject the affidavits upon which the suggestions of disqualification are based and hold that neither Mr. Justice Stainback nor Mr. Justice Rice is disqualified.

While the writer of this opinion feels that he has no personal bias or prejudice against the affiant, and for the reasons set forth above that he is not technically disqualified, particularly because the suggestions of disqualification were not timely made (see cases *supra*), yet there are other matters to be considered.

While technicalities are frequently necessary to expedite proceedings and make an end to litigation, justice is not always furthered by standing on such technicalities and, where possible, such should usually be waived where such can be done with fairness to all parties. "The letter killeth, but the spirit giveth life" is as true today as when first uttered.

A judge owes a duty not to withdraw from a case — however much his personal feelings may incline him to do so — where he is not legally disqualified, yet there may be circumstances that cast suspicion on the fairness of the judge proceeding in the case so that it may be advisable for a judge not technically disqualified to withdraw *sua sponte*.

It might reasonably appear from that portion of my testimony given before the Senate Committee, as contained in the affidavit in support of the suggestion of my disqualification (which affidavit alone is to be considered) that I had adversely classified affiant and have prejudged her case.

It is not only important to render a righteous and

correct judgment but that it be done in such a manner that it will beget no suspicion of the fairness and integrity of the judge. (30 Am. Jur., *Judges*, § 35, p. 767.)

I agree with the statement of Mr. Justice Madden in *United States* v. *Valenti, supra,* who — after holding at great length that he had no personal bias and further that he was not legally disqualified in the proceeding — transferred the case *sua sponte* with the statement: "And human nature being what it is, and being projected as it must through individual personalities, it is imperative that those entrusted with the awesome responsibility of administering justice should, so far as is reasonably possible, insure the fullest measure of dispassionate consideration and impartiality, rather than chance even the slightest taint * * *."

I, therefore, shall take no part in the hearings of this matter upon its merits but respectfully suggest that a substitute be selected to serve in my stead.

*Myer C. Symonds* and *John T. McTernan* for suggestions, for Harriet Bouslog, respondent.

*A. William Barlow* for Bar Association.

*Edward N. Sylva,* Attorney General, and *Morio Omori,* Deputy Attorney General, for Territory.

### CONCURRING OPINION OF RICE, J.

I have joined in the opinion of the court as enunciated by Mr. Justice Stainback, as I concur in his therein stated principles of law and his therein summarization (1) as to the provisions of section 9573 of the Revised Laws of Hawaii 1945, relating to disqualification of judges, not being applicable to a justice of the supreme court and that though additionally a justice having the relationship, pecuniary interest or having rendered a previous judgment as specified therein would be disqualified under the provisions of section 84 of the Organic Act, if not so disquali-

fied, he may nevertheless excuse himself from participating in a case where he feels that fairness and justice require his withdrawal; also, (2) that in the instant matter the suggestions of disqualification of the justices for bias or prejudice were not timely made; in fact, not until after affiant had received adverse ruling on the sufficiency of complaint did she make her affidavit of bias and prejudice against the two justices ruling against her; and further, (3) the affidavit attempting to disqualify Mr. Justice Stainback is at least technically defective and that referring to Mr. Justice Rice is not only technically defective but does not in the remotest degree set forth any facts which would show personal bias or prejudice against the affiant.

Therefore, I likewise concur in the ruling that, we reject the affidavits upon which the suggestions of disqualification are based and hold that neither Mr. Justice Stainback nor Mr. Justice Rice is disqualified.

I believe that Mr. Justice Stainback has set forth adequate reasons for his voluntary withdrawal from participation in the hearing on the merits of the matter. However, I feel that there are not like reasons or any good reasons for voluntary withdrawal by myself, Justice Rice, and I feel that I can give the fullest measure of dispassionate consideration and impartiality to the hearing on the merits and accord to the respondent Harriet Bouslog Sawyer, also known as Harriet Bouslog, the fullest, fairest and impartial hearing. Wherefore, I do not withdraw from the bench for the hearing of her case.

### DISSENTING OPINION OF TOWSE, C. J.

I respectfully concur only in the principles of law enumerated in the majority opinion and in the voluntary act of withdrawal of Mr. Justice Ingram M. Stainback from participation in the hearing of this matter.

I am of the opinion, upon the entire record before us, the exhibits, the subject matter of the respective affidavits and the arguments of all counsel thereon:

First, that it is incumbent upon Mr. Justice Philip L. Rice as in the case of Mr. Justice Ingram M. Stainback, in order to avoid and dissolve any question whatsoever as to the propriety of Mr. Justice Philip L. Rice sitting as a member of the court upon the hearing of this cause; and

Second, that it is likewise incumbent upon Mr. Justice Philip L. Rice, as in the case of Mr. Justice Ingram M. Stainback, to the end that the fullest measure of dispassionate consideration and impartiality by this court may be insured upon said hearing, rather than chance even the slightest taint, however obscure, which would or could cast shadow or divert the fullest, fairest, and impartial hearing to which the respondent herein and any other respondent or litigant is entitled in accordance with the fundamental tenets and highest ideals of traditional concepts of fairness and justice,

That Mr. Justice Philip L. Rice should forthwith, as in the case of Mr. Justice Ingram M. Stainback, voluntarily recuse himself *sua sponte* for the compelling reasons that become apparent upon examination and consideration of said record.